GOMOLKA, EXRX., APPELLEE, *v.* STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, APPELLANT.

(No. 81-985—Decided June 16, 1982.)

*Mansour, Gavin, Gerlack, & Manos Co., L.P.A., Mr. Ernest P. Mansour, Mr. Jeffrey M. Embleton, Messrs. Eardley & Wantz* and *Mr. David J. Eardley,* for appellee.

*Messrs. Cronquist, Smith, Marshall & Kagels* and *Mr. Jack F. Smith,* for appellant.

PALMER, J.   The sole question presented is whether the policy of insurance issued by appellant to the Gomolkas and in force at the time of the accident to Mr. Gomolka extended to them *underinsured* motorist coverage, in addition to a conceded *uninsured* motorist coverage.

Such questions of law are determined, in the first instance, by an examination of the relevant insurance documents, utilizing therein the familiar rules of construction and interpretation applicable to contracts generally. *Wagner* v. *National Fire Ins. Co.* (1937), 132 Ohio St. 405, 412. To the extent that a brief review of those rules of construction relevant to the instant question may be useful before examining the language of the policy in detail, we note, initially, that words and phrases used in an insurance policy must be given their natural and

commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined. *Dealers Dairy Products Co.* v. *Royal Ins. Co.* (1960), 170 Ohio St. 336, paragraph one of the syllabus. The insurer, having prepared the policy, must also be prepared to accept any reasonable interpretation, consistent with the foregoing, in favor of the insured. *Home Indem. Co.* v. *Plymouth* (1945), 146 Ohio St. 96, 101.

It is quite proper to emphasize, as appellant does, that such rules of construction and interpretation possess definite limitations. Thus, where the provisions of an insurance policy are clear and unambiguous courts may not indulge themselves in enlarging the contract by implication in order to embrace an object distinct from that contemplated by the parties, *Stickel* v. *Excess Ins. Co.* (1939), 136 Ohio St. 49, paragraph one of the syllabus, nor read into the contract a meaning not placed there by an act of the parties, *Motorists Ins. Co.* v. *Tomanski* (1970), 27 Ohio St. 2d 222, 226; *Olmstead* v. *Lumbermens Mutl. Ins. Co.* (1970), 22 Ohio St. 2d 212, 216, nor make a new contract for the parties where their unequivocal acts demonstrate an intention to the contrary, *Jackson* v. *Metropolitan Life Ins. Co.* (1973), 34 Ohio St. 2d 138, 140; *Fidelity & Cas. Co.* v. *Hartzell Bros. Co.* (1924), 109 Ohio St. 566.

Where, however, it may reasonably be concluded that the language of a policy is ambiguous and may therefore be subject to different interpretations, a universally applied axiom of construction becomes appropriate to resolve the ambiguity. As stated in *Butche* v. *Ohio Cas. Ins. Co.* (1962), 174 Ohio St. 144, 146:

"* * * [P]olicies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretations, will be construed most favorably for the insured. *Home Indemnity Co.* v. *Village of Plymouth* (1945), 146 Ohio St., 96, 64 N.E. (2d), 248." See, also, *Buckeye Union Ins. Co.* v. *Price* (1974), 39 Ohio St. 2d 95; *American Financial Corp.* v. *Fireman's Fund Ins. Co.* (1968), 15 Ohio St. 2d 171, 173; 44 Corpus Juris Secundum 1166, Insurance, Section 297(C). See generally, 1 Couch on Insurance 2d 776, Section 15:73; 30 Ohio Jurisprudence 2d 225, Insurance, Section 215.

Bearing these several principles of construction in mind, an examination of the relevant insurance policy reveals that it consisted of a printed, multi-page contract form entitled, Special Budget/Automobile Policy, containing general provisions relating to liability, medical expense, uninsured motorist and other coverage, protection against automobile physical damage, and various conditions and exclusions. Attached to this printed form was a one-page computer printout sheet entitled, Renewal Declarations Page-Part Two Special Budget Automobile Policy, the open boxes of which were completed with the relevant information typed in. Several printed endorsement forms and a general printed form entitled, Automobile Amendatory Endorsements, and designated as Form AU-18, completed the contract documents delivered to the Gomolkas by appellant.

The language contained in this policy relevant to the instant issue may be summarized in the following manner. The basic printed policy form commences:

"STATE AUTOMOBILE MUTUAL INSURANCE COMPANY of Columbus, Ohio, herein called the company

*"In consideration of the payment of the premium,* in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the insured named in the declarations as follows:

"PART I—PROTECTION AGAINST LIABILITY, MEDICAL EXPENSE AND UNINSURED MOTORISTS ACCIDENTAL DEATH BENEFIT
"* * *

"Protection Against UNINSURED MOTORIST COVERAGE. The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an *uninsured highway vehicle* because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such *uninsured highway vehicle* * * *." (Emphasis added.) This printed form further provides:

"Definitions. When used with respect to Part I:
"* * *

"*'uninsured highway vehicle'* " means:
"(a) a highway vehicle with respect to the ownership,

maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder, or a hit-and-run vehicle." (Emphasis added.)

The various inserts made part of the contract of insurance begin with the Declarations Page, which recites in relevant part:

"RENEWAL DECLARATIONS PAGE—PART TWO SPECIAL BUDGET AUTOMOBILE POLICY

"THIS DECLARATIONS PAGE WITH POLICY PROVISIONS PART ONE FORM SBP-3 CONTINUES THIS POLICY IN FORCE FOR THE PERIOD INDICATED UPON VALID PAYMENT OF THE PREMIUM WHEN DUE.

"* * *

| "COVERAGES | LIMIT OF LIABILITY | PREMIUMS (IN DOLLARS) | | | |
| --- | --- | --- | --- | --- | --- |
| | | Auto 1 | Auto 2 | Auto 3 | Auto 4 |
| "PART I | | | | | |
| Liability | $300,000 Each Occurrence | | | | |
| Medical Expense | $5,000 Each Person | | | | |
| Accidental Death Benefit | $2,000 Each Named Insured | | | | |
| Uninsured Motorists | $300,000 Each Accident | 64 | 116 | 88 | |
| "PART II | | | | | |
| Comprehensive-Actual Cash Value Less Deductible | Car 1 Car 2 Car 3 $100 $100 $100 | 10 | 29 | 22 | |
| Collision-Actual Cash Value Less Deductible | Car 1 Car 2 Car 3 $200 $200 $200 | 29 | 50 | 54 | |

"Insurance Afforded Only Where Premium Charge Indicated

TOTAL AUTO 1, 2, 3, 4 ► 103 195 164

FORM APPLICABLE      Total Term Premium $ 462
"FAP4106/73,GEN19402/74,GEN17410/67, E104A11/77,FAP3409/70,E13111/78,
    Attach To Your Policy
    Signature Not Required 5/26/79
    Authorized Signature Date"

Finally, the policy includes the printed endorsements, the principal one of which is entitled, Automobile Amendatory Endorsements, Form AU-18, consisting of two printed pages listing seven separate endorsements. Two additional endorsements are contained on separate printed sheets. At least six of these nine endorsements are conceded to be applicable to the policy and were made so automatically without payment of a separate or additional premium. The endorsement in dispute, known as Gen 183, is contained in the general Form AU-18, which begins with the following words:

"THE FOLLOWING ENDORSEMENTS, IF DESIGNATED *IN THE DECLARATIONS* OF THE POLICY APPLY" and continues on the last page of AU-18 with the wording of Gen 183:

"SUPPLEMENTARY UNINSURED MOTORISTS INSURANCE - Bodily Injury - Underinsured Motorists (Limits Above Basic)

*"When coverage for Uninsured Motorists Coverage is indicated in the declarations to apply, in consideration of the premium charged, the policy is amended as follows:*

*"It is agreed that,* with respect to such insurance as is afforded by the policy for damages because of bodily injury caused by accident and arising out of the ownership, maintenance or use of an uninsured highway vehicle or an uninsured automobile, *subdivision (a) of the definition of 'uninsured highway vehicle'* (or the first sub-division, designated (a) or (1), of the definition of 'uninsured automobile'), *is amended to include 'underinsured highway vehicle'* subject to the following provisions:

"1. If limits of liability for such insurance are stated in the schedule of this endorsement such limits shall apply in lieu of any limits therefor stated elsewhere in the policy and, subject to all the terms of the policy having reference thereto, shall be the total limit of the company's liability for all damages because of bodily injury as the result of any one accident arising out of the ownership, maintenance or use of the uninsured highway vehicles or uninsured automobiles.

"2. When used in reference to this insurance (including this and other endorsements forming a part of the policy):

" *'underinsured highway vehicle'* means a highway vehicle

with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under this insurance." (Emphasis added.)

As appellant reads the foregoing documents comprising the insurance contract with the Gomolkas, it concedes that the Gomolkas were covered by *uninsured* motorist coverage to a liability limit of $300,000 for each accident, but denies that *underinsured* motorist coverage was extended and, moreover, denies the existence of any uncertainty or ambiguity with respect thereto. Pointing to the initial language in Form AU-18 that: "The Following Endorsements, If Designated In The Declarations Of The Policy Apply," and that the Declarations Page does not designate Gen 183 as one of those six endorsements applicable to the policy, appellant concludes that Gen 183 was unambiguously excluded from the Gomolka policy. Further, argues appellent, it is clear from the policy that if underinsured coverage was sought by the insureds, an additional premium would be required, a conclusion confirmed by testimony of an underwriter employed by appellant. Since no additional premium was paid by the Gomolkas, and since the Gomolkas neither specifically requested nor discussed underinsured coverage with the selling agent of appellant, appellant urges us to find that the trial court correctly determined the issue against the existence of underinsured motorist coverage.

While it is apparent that the instant policy, read solely as appellant would have it, would indeed sustain appellant's conclusion, insurance contracts may not be read in so circumscribed a fashion. One may not regard only the right hand which giveth, if the left hand also taketh away. The intention of the parties must be derived instead from the instrument as a whole, and not from detached or isolated parts thereof. *Stickel* v. *Excess Ins. Co., supra,* at page 53; *Germania Fire Ins. Co.* v. *Schild* (1903), 69 Ohio St. 136. Moreover, absent some special circumstance, such as a contractual definition, or a commercial or technical meaning acquired by usage and intended to be used by the parties, or a special meaning manifested in the contractual context, the entire policy must

be considered and construed in a fashion which accords words and phrases therein their natural and usual meaning. *Bobier* v. *National Cas. Co.* (1944), 143 Ohio St. 215, paragraph one of the syllabus; *Royal Ins. Co.* v. *Jack* (1925), 113 Ohio St. 153, 163-64; *Fidelity & Cas. Co.* v. *Hartzell Bros., supra,* at 569; *Webster* v. *Dwelling House Ins. Co.* (1895), 53 Ohio St. 558, 565-566; *Olmstead* v. *Lumbermens Mutl. Ins. Co., supra,* at 217.

Our inquiry is, therefore, directed to what may reasonably have been understood, and thus intended, from the policy as a whole, giving each part thereof its proportionate significance and the words and phrases used therein their usual and natural meaning. So considered, we conclude that the instant policy could reasonably be read to extend, by applicable endorsement and without the payment of a separate additional premium, underinsured motorist coverage.

Thus, the introduction to Part I of the printed policy extends uninsured motorist coverage "[i]n consideration of the payment of the premium * * *." The underinsured motorist endorsement, Gen 183, forwarded to the Gomolkas when they renewed their basic policy, along with other endorsements requiring no action on the part of the insureds, begins its recital with the following words:

"When coverage for Uninsured Motorists Coverage is indicated in the declarations to apply, *in consideration of the premium charged,* the policy is amended as follows:" (Emphasis added.)

Since the Declarations Page lists uninsured motorist coverage and the premium charge applicable thereto, this may reasonably be read to incorporate the balance of the Gen 183 endorsement into the policy. The use of the singular in referring to a "premium" is consistent throughout the policy. Nowhere is there an express recital that a *separate* or *additional* premium charge was required to trigger the applicability of Gen 183. The Declarations Page, it will be recalled, simply aggregates the premium charge for Part I and Part II coverage on the three automobiles onto a line which is headed: Insurance Afforded Only Where Premium Charge Indicated.

The Gomolkas paid the "premium charge," a part of which was expressly attributed to uninsured motorist coverage, and

could reasonably conclude from the above-quoted language of Gen 183 that they were thereby purchasing underinsured motorists coverage as well. The contraindications to this conclusion relied upon by appellant simply demonstrate, at most, the existence of an ambiguity and uncertainty therein.[1] It is at least as reasonable for an ordinary person to have read the language of this policy as having extended the underinsured coverage of Gen 183 without premium charge beyond that paid for uninsured motorist coverage—just as the bulk of the other endorsements contained in Form AU-18 were extended automatically and without charge—as to have read the policy to exclude Gen 183 unless it was listed in the cluttered[2] and otherwise unfeatured box on the Declarations Page.

This being the case, the rule of construction is quite clear. As this court recently held in *Buckeye Union, supra,* (39 Ohio St. 2d 95):

"Language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer."

It follows that the Court of Appeals correctly held that the instant insurance policy extended underinsured motorist

---

[1] This obfuscatory approach to underinsured motorist coverage was not limited to the policy provisions. A printed flyer mailed by appellant to all of its policyholders at a time prior to the accident in question entitled, IMPORTANT NOTICE ABOUT A NEW OHIO LAW and how it may affect the coverage and cost of your Automobile Insurance Policy, and purporting to explain amendments to Ohio law relating to uninsured motorist coverage, also contained several paragraphs about "* * * an optional form of protection . . . *Under*insured Motorist Coverage." (Emphasis added.) The flyer noted that such optional coverage could be purchased for an additional premium. The concluding paragraph of the flyer, however, read:

"If Endorsement No. Gen 183 is attached to your policy, you have previously purchased the broader *Under*insured form of coverage. If any change in this coverage is desired, see your State Auto Agent." (Emphasis *sic.*)

[2] The proper interpretation of this box could scarcely be other than a challenge to an ordinary reader. The "Forms Applicable," *i.e.,* the endorsements, are referred to by symbols inserted in random order and in a form differing from that displayed on the endorsements themselves. Thus, the Waiver of Collision Deductible which is identified on the endorsement form as FAP-41 is listed in the Declarations Page box as FAP 4106/73, while Gen 194 is listed as GEN19402/74, and so on. While it might ultimately become clear to a sophisticated reader that the last four digits on the symbols in the box are dates bearing some unknown relationship to the endorsements, the transition is far from clear or easily made.

coverage as set forth in Gen 183, and that judgment is accordingly affirmed.

*Judgment affirmed.*

COOK, SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.

CELEBREZZE, C. J., concurs in the judgment.

COOK, J., of the Eleventh Appellate District, sitting for W. BROWN, J.

PALMER, J., of the First Appellate District, sitting for KRUPANSKY, J.