DICK, ADMX., APPELLEE, *v.* ALLSTATE INSURANCE COMPANY, APPELLANT, ET AL.

(No. C-850694—Decided September 17, 1986.)

*Shea & MacKay* and *Joseph W. Shea,* for appellee.

*Dooley & Heath Co., L.P.A.,* and *James V. Heath,* for appellant.

*Per Curiam.* This cause came on to be heard upon the appeal from the Court of Common Pleas of Hamilton County.

In this appeal, we are concerned with a claim for declaratory judgment that was resolved as a matter of law, pursuant to Civ. R. 56, when a judge of the court of common pleas determined the extent of certain rights and obligations created under the terms of an automobile insurance policy issued by the defendant-appellant, Allstate Insurance Company. The question posed by the only assignment of error given to us for review is whether the judge misconstrued the operative language of the policy in his assessment of the limits of coverage it afforded to the estate of the named insured, James Dick, who had met his death on August 8, 1984, as a result of bodily injuries sustained in an accident caused by the negligence of an underinsured motorist.

Although there were several points in dispute at the outset of the proceedings in the court below, the parties were able, as the litigation progressed, to narrow the focus of the controversy to one pivotal issue. In general terms, what remained to be decided at the time the matter was submitted upon a motion for summary judgment was the total amount of funds available for the benefit of the decedent's wife and three minor children, each of whom was entitled, as a person insured within the plain meaning of the contract,[1] to recover damages for the wrongful death of James Dick.

According to the record, underinsured motorist coverage was made a part of the Dick policy, in accordance with Ohio law, in limits equal to those extended by Allstate for "Bodily Injury Liability Insurance." The applicable amounts, as they were stated on the declarations page, were $100,000 for each person and $300,000 for each accident. Definitions for the terms "each person" and "each accident" were included in various sections of the policy. Although the most comprehensive set of them appeared within the provisions describing general liability insurance for bodily injuries, there was a separate abbreviated version set forth in the section specifically devoted to underinsured motorists. Regarded below by the parties as the primary stumbling block in their dispute over the limits of Allstate's liability for the satisfaction of claims arising out of James Dick's death, it read, in relevant part, as follows:

"The coverage limit stated on the declarations page for:

"(1) 'each person' is the total limit for all damages arising out of bodily injury to one person in any one motor vehicle accident.

"(2) 'each accident' is the total limit for all damages arising out of bodily injury to two or more persons in any one motor vehicle accident."

At the heart of the impasse was Allstate's insistence that its obligation to pay damages for the losses occasioned by the negligence of the underinsured motorist was to be measured entirely by application of the

---

[1] Among the persons insured under the policy for losses caused by an underinsured motorist were the named insured and any relative residing in the named insured's household.

"each person" limitations set forth in the policy. This was so, it reasoned, because the wrongful death of James Dick was directly attributable to the bodily injuries he alone had sustained in one motor vehicle accident. From Allstate's point of view, therefore, a total of $100,000 in underinsured motorist coverage was available under the policy, notwithstanding the fact that more than one insured person was claiming an entitlement to damages as a result of Dick's death.

Dick's estate countered by arguing on behalf of the four surviving family members that Allstate's reliance on the $100,000 "each person" limitation was misplaced in view of the specific manner in which the company had chosen to frame its obligations within the policy. Noting that the provisions addressing the limits of liability for underinsured motorists referred simply to "bodily injury" and omitted any reference to death, the estate summarized its position in favor of a greater amount of total available coverage in this way:

"The Allstate insurance policy only limits the amount of recovery to $100,000 when the damage sustained arises out of bodily injury. In this case, it is clear that the damages arise out of death. Therefore, the widow and minor children are [each] entitled to $100,000 per person, for a total not exceeding $300,000 per accident."

After independently reviewing the terms of the policy and considering the arguments advanced by the parties, the judge presiding below resolved the dispute by awarding summary judgment to Dick's estate. In the written decision that accompanied the order from which this appeal is taken, his rationale for interpreting the policy largely in the manner urged by the estate was expressed as follows:

"* * * [The limits of liability as set forth in the underinsured motorists section of the policy] apply only to 'damages arising out of bodily injury.' Plaintiff and her minor children are claiming damages for wrongful death under provision of O.R.C. §2125.01. Therefore these limits are not applicable in this case. If defendant [Allstate] had wanted these limits to apply to damages from death it could have included terminology similar to that used [in the general] description of the uninsured/underinsured motorists coverage[:] 'damages for bodily injury, sickness, disease or death.['] While use of bodily injury may be said to include death, without any express language to that effect, any ambiguity in the interpretation of the limitation must be liberally construed in favor of the insured. * * * Thus *$100,000 per each person insured* should be the amount of coverage available subject to the overall policy limitation of $300,000." (Emphasis added.)

Allstate now asserts in its only assignment of error that the judge missed the mark and ignored the plain meaning of the policy as a whole by determining that there was $100,000 worth of coverage separately available to each of the four surviving members of Dick's family, to the extent that their claims collectively did not exceed the policy's "each accident" limitation of $300,000. As the company sees it, the logic of the argument it advanced below is unassailable from a legal standpoint; because the named insured here died as a result of bodily injuries sustained at the hands of an underinsured motorist in one accident, the contractual limitation extending only $100,000 worth of coverage for "all damages arising out of bodily injury to one person in any one motor vehicle accident" should have been applied with full force to limit the total damages recoverable under the policy due to the wrongful death of the named insured.

In reviewing this claim, we must

turn for guidance to the rules of construction applicable to any case in which the meaning of an insurance contract is drawn into question. Our predominant concern is to ascertain the intent of the parties from a reading of the contract in its entirety, and to settle upon a reasonable interpretation of the disputed terms in a manner calculated to give the agreement its intended effect. *Sentry Life Ins. Co.* v. *Lustgarten* (S.D. Ohio 1984), 603 F. Supp. 509; *Travelers Ins. Co.* v. *Buckeye Union Cas. Co.* (1961), 172 Ohio St. 507, 18 O.O. 2d 52, 178 N.E. 2d 792. In so doing, we are bound to give the terms at issue their plain and ordinary meanings, and only in the event of an ambiguity are we permitted to resolve doubts in ·a manner favorable to the insured. See *Karabin* v. *State Auto. Mut. Ins. Co.* (1984), 10 Ohio St. 3d 163, 10 OBR 497, 462 N.E. 2d 403; *Gomolka* v. *State Auto. Mut. Ins. Co.* (1982), 70 Ohio St. 2d 166, 24 O.O. 3d 274, 436 N.E. 2d 1347; *Travelers Indemnity Co.* v. *Reddick* (1974), 37 Ohio St. 2d 119, 66 O.O. 2d 259, 308 N.E. 2d 454.

With these points in mind, it is our view that the analysis employed below to reject Allstate's interpretation of the Dick policy is flawed in at least two material respects. While it purports to hold inapplicable to the present case the limits of liability explicitly set forth in the description of the underinsured motorist coverage,· it ultimately relies upon the "each accident" limitation as a benchmark to establish the maximum amount of coverage available to the estate as a result of James Dick's wrongful death. At the same time, in extending $100,000 worth of coverage separately to each insured family member represented in the estate, it effectively imposes a new limit of liability that is clearly inconsistent with the language actually appearing in the policy.

What the trial court overlooked in its analysis is the unmistakable fact that the policy provided two exclusive formulas for determining the limits of Allstate's liability with respect to all claims predicated upon the negligence of an underinsured motorist, and that each formula called for the assessment of liability strictly in terms of the number of persons injured in a given motor vehicle accident. Nowhere in the policy is there a tenable basis for concluding that the limits were otherwise to be defined by the number of persons qualifying as insureds under the agreement.

It follows, then, that the interpretation of the policy in the context of the claims arising out of Dick's death should have given rise to a choice between two basic alternatives. The appropriate measure of Allstate's liability was either $100,000 under the "each person" limitation, or $300,000 under the "each accident" limitation.

In our judgment, the "each accident" limitation cannot be held to come into play in the case *sub judice* because, as we have already noted, it was, by its terms, clearly intended to apply only when two or more persons sustained bodily injuries in one motor vehicle accident. Although the claims here derived, without question, from one accident, the fact remains that there was only one person injured. Given these circumstances, we are convinced ·that the court below should have assessed the question of Allstate's liability under the "each person" limitation of $100,000 because it was there that the policy effectively set "the total limit for all damages arising out of bodily injury to one person in any one motor vehicle accident."

Our holding is not affected by the absence of a specific reference to death in the wording of the "each person" limitation as it appears in the underinsured motorist section of the policy.

When the policy is read as a whole, it must be said that the limitation's general reference to "all damages arising out of bodily injury to one person" fairly contemplates those cases in which the bodily injury has resulted in death. Any doubt in this respect is eliminated by operation of the separate provision specifically making the limits of underinsured motorist coverage equivalent to those in effect for general liability insurance. Once the comprehensive definition of the limits contained in the general-liability section of the agreement is properly taken into consideration, it becomes clear that the $100,000 limitation stated on the declarations page for bodily injury to each person applies in this case to "all damages arising from bodily injury, sickness, disease, or *death* sustained by one person in any one occurrence." (Emphasis added.)

Having concluded that James Dick's death gave rise to coverage under the Allstate policy subject to the "each person" limitation of $100,000, we are now left to determine whether $100,000 worth of coverage was separately available to satisfy each of the four claims advanced by Dick's estate on behalf of his insured wife and minor children. To answer this question, we must, in the first instance, examine the significance of the holding announced by the Ohio Supreme Court in *Auto-Owners Mut. Ins. Co.* v. *Lewis* (1984), 10 Ohio St. 3d 156, 10 OBR 490, 462 N.E. 2d 396, the second paragraph of the syllabus of which reads as follows:

"Where separate and independent causes of action arise from injuries caused by an uninsured motorist and such injuries are covered by the uninsured motorist provision of an automobile insurance policy, the policy limits applicable to uninsured motorist coverage will be available to each cause of action. * * *"

In our view, the rule of *Lewis* must be read to extend logically to cases such as this involving underinsured, rather than insured, motorist coverage. It can only be given effect, however, as a basis for permitting more than one application of a given set of policy limits when a particular loss has resulted in separate and independent causes of action. That is clearly not the case here. Although each surviving member of Dick's immediate family may be entitled to receive damages as a result of the negligence of the underinsured motorist, there is only one cause of action for the recovery of those damages under Ohio's wrongful death statute. R.C. 2125.02.[2] We are convinced, therefore, that the "each person" limitation of $100,000 cannot be invoked separately with respect to each family member claiming damages in this case, unless the terms of the policy itself specifically provide for the multiple application of coverages.

In this respect, we find apposite the following language set forth in the underinsured motorist section of the agreement:

" * * * [The limits of liability] apply to each insured auto as stated on the declarations page. This means *the insuring of more than one person* or

<hr>

[2] The statute limits recovery for wrongful death to a single cause of action in these terms:

"An action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent." R.C. 2125.02(A)(1).

auto under this or other auto policies *will not increase our [underinsured] motorists limit of liability beyond the amount shown for any one auto,* even though a separate premium is charged for each auto." (Emphasis added.)

As we see it, the significance of the foregoing provision is clear and unambiguous. In accordance with the authority granted in R.C. 3937.18,[3] it works to preclude what has become known in the insurance industry as the stacking of coverages. This means in the case *sub judice* that there was a total of only $100,000 available under the Allstate policy to satisfy all the claims arising out of the wrongful death of James Dick, notwithstanding the fact that the four family members on whose behalf the claims were asserted were each properly considered as insured persons within the meaning of the contract.

For these reasons, we must conclude, in sum, that the judge presiding below erroneously construed the policy when he declared (1) that the "each person" limitation of $100,000 was inapplicable to claims predicated upon the wrongful death of a person injured in one motor vehicle accident, and (2) that $100,000 was instead separately available to each person claiming damages as a result of the wrongful death, subject only to the "each accident" limitation of $300,000. Allstate's total liability under the policy should appropriately have been limited to an amount no greater than $100,000. The assignment of error given to us for review is, accordingly, well-taken.

---

[3] R.C. 3937.18(G) provides specifically that:

"Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section [uninsured and underinsured motorist losses] may include terms and conditions that preclude stacking of such coverages."

The judgment of the court of common pleas is hereby reversed, and this cause is remanded for the entry of an order declaring the rights and obligations of the parties in accordance with the terms of this decision.

*Judgment reversed and cause remanded.*

SHANNON, P.J., BLACK and HILDEBRANDT, JJ., concur.