OPINION
This appeal is taken by Marathon Oil Company, et al., from the judgment entered by the Court of Common Pleas of Mercer County declaring the policy issued by Celina Mutual Insurance Co. effectively excluded Marathon from recovery of damages for the remediation of property damaged by the negligence of an individual insured under the policy.
On November 10, 1993, Dean Homan, an employee of Marvin Heitkamp Heitkamp Farm Drainage, Inc. (collectively "Heitkamp"), was operating a trenching machine in a field near Celina, Ohio, (the "Site") owned by Mark F. and Rose Mary Schwieterman ("Schweitermans"). Heitkamp had been hired to install new drainage tile on the Site.
Marathon Oil and Buckeye Pipeline Company, LP were co-owners of an 8" pipeline ("the Pipeline") through which unleaded gasoline was transported from Robinson, Illinois to Lima, Ohio. The Pipeline was operated on their behalf by Marathon Pipe line Company ("MPLC"), pursuant to an operating agreement with the co-owners. Marathon Oil Company, Buckeye Pipeline Company, LP and MPLC will be referred to collectively as "Marathon".
Prior to beginning work on the Site, Heitkamp called Ohio Utilities Protection Service to report Heitkamp's intentions to excavate. Ohio Utilities Protection Service in turn notified Marathon.
On November 8, 1993, Heitkamp began work on the Site, and the work proceeded uneventfully until November 10, 1993. On the morning of November 10, 1993, while operating the trenching machine, Dean Homan negligently struck and punctured the pipeline, resulting in the escape of approximately 855 barrels (36,000 gallons) of unleaded gasoline from the pipeline (hereinafter the "Incident").
At the time of the Incident, pursuant to the Oil Pollution Act of 1990, Marathon had in place an emergency response plan known as an OPA 90 plan. The Oil Pollution Act of 1990 ("OPA 90") requires that facilities transporting oil have an emergency response system intact should an emergency occur. It requires only that a procedural framework for emergency response be in place not that the facility transporting the oil respond. 33 U.S.C.A. § 2701-2761 [33 U.S.C. § 2701-2761].
As part of its emergency response plan Marathon had a contract with Interdyne, Inc. ("Interdyne") for the performance of emergency response activities. Pursuant to that contract, and upon learning of the Incident, Marathon notified Interdyne. Interdyne sent personnel to the scene and immediately commenced actions to recover the gasoline, to contain the gasoline, and to prevent the gasoline from further migrating.
After shutting off the flow of gasoline and insuring a safe working environment the damaged section of the pipeline was removed and replaced. This work was finished and the pipeline was restored to service by midday on November 12, 1993.
At the time of the Incident, Heitkamp was insured by Celina Mutual Insurance Company ("Celina Mutual") under a policy providing first party property insurance and third party liability insurance, subject to the terms and conditions of the policy. Employees of the insurance company heard about the Incident on their police scanner and recognizing the names of the parties as insureds drove to the Site to investigate.
Upon arrival at the Site an employee of Celina Mutual began taking statements from Heitkamp and Homan. In the days following Celina Mutual informed Heitkamp that his policy contained an "absolute pollution exclusion" and that not all of the damages resulting from the Incident would be covered under the policy.
The Ohio Environmental Protection Agency ("Ohio EPA") was also notified of the Incident and a representative of its Division of Emergency Response and Remediation came to the scene on November 10, 1993, and returned intermittently thereafter. An employee of the Ohio EPA spoke with Celina Mutual during their investigation of the site. For purposes of keeping informed several members of the Ohio EPA met with employees of Marathon during the course of the clean-up.
On October 10, 1995, Marathon filed suit against Heitkamp and the Schwietermans claiming their negligent actions resulted in the damages incurred by Marathon. On February 15, 1996 Celina filed a declaratory judgment action.
By agreement the declaratory judgment action and the underlying action were mediated on December 16, 1996. As a result of that mediation, all claims in the underlying action were resolved, and Heitkamp's claims against Celina Mutual for coverage under the policy except for Heitkamp's bad faith claims, were assigned to Marathon. Celina and Marathon agreed to submit the following three questions to the court for determination:
 Whether Section I, Coverage A, Exclusion 2(f) of [the] policy * * * issued by Celina to Marvin Heitkamp and Heitkamp Farm Drainage, Inc., * * * applicable to any of the claims presented by Marathon and Buckeye * * *
 Whether Section I, Coverage B provides coverage for both claims.
 If Section I Coverage A and Coverage B of the Policy both provide coverage for the claims what is the maximum amount of insurance available for the incident of November 10, 1993 under the Policy?
On January 21, 2000, the court declared that Celina Mutual had effectively excluded Marathon from any recovery for the damages relating to clean up and remediation of the Site. It stated in part:
 "The costs and expenses for the cleaning up, removing, containing, treating, detoxifying or neutralizing, or any other ways of responding to the effects of Marathon's unleaded gasoline on the Schwieterman farm for which the Heitkamps are legally obligated to pay would otherwise be covered by Celina's commercial general liability coverage under Section I, Coverage A. However, exclusion 2(f) specifically excludes coverage for such a loss, cost, or expense incurred by its insured Heitkamps. The unleaded gasoline satisfies the policy definition of a pollutant, i.e., a liquid contaminant. If there was not a formal demand or order to cleanup the gasoline, that was only because neither was necessary in light of the implicit request of Schwietermans and OEPA.
On appeal from that judgment Marathon makes the following four assignments of error:
 The trial court erred in finding in favor of plaintiff on all counts as it failed to abide by well-established principles of Ohio Law governing contract interpretation.
 The trial court erred in determining that no coverage exists under Section I, coverage A of the Celina Mutual Insurance Company Policy.
 The trial court erred in determining that no coverage exists under Section I, Coverage B of Celina Mutual Insurance Company policy.
 The trial court erred in failing to rule on the issue of whether or not Marathon Oil Company and Buckeye Pipe Line Company, L.P., are entitled to recover the aggregate limits of the Celina Mutual Insurance Company Policy.
All of Marathon's assignments of error claim that the trial court erred as a matter of law by incorrectly interpreting the insurance contract issued by Celina Mutual in favor of the Heitkamps to exclude all damages incurred by Marathon for remediation of the Site. Marathon's first assignment of error is vague and asks this Court to proclaim that the trial court's method and reasoning for resolving the above dispute was inaccurate and faulted by its failure to abide by well-established Ohio law. We perceive that the first assignment of error is contained in the second and third assignments of error that point to specific errors in reasoning made by the trial court when interpreting certain provisions of the policy. Therefore, the first assignment of error will be addressed in conjunction with the second and third assignments of error.
In its second assignment of error Marathon argues that the trial court erred by determining that no coverage existed under Section I, Coverage A of the Celina Mutual policy. Specifically Marathon claims that Coverage A provides for the payment of expenses due to property damage and subsequent clean up costs incident to such property damage and Celina Mutual must indemnify them for their loss. Moreover, Marathon argues that exclusion F(2)(a) upon which Celina Mutual relies is not applicable to the facts of this case. The insurance agreement is in pertinent part:
 Section I Coverage A
Insuring Agreement.
 We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury' or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.
* * *
 This insurance applies to "bodily injury" and "property damage" only if:
 The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
 The "bodily injury" or "property damage" occurs during the policy period.
 Exclusions
This insurance does not apply to:
F. (2) Any loss, cost or expense arising out of any:
 Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or
* * *
 Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
At issue here are the words "request, demand or order". Marathon argues that its action in remediating the site did not arise out of a "request, demand or order". In fact, Marathon claims that the "request, demand or order" must be explicit not merely implied as the trial court stated it had been. Moreover, no such "request, demand or order" implied or explicit existed in the record. In contrast Celina Mutual argues that any "request, demand order" even those not stated explicitly but implied satisfy the language stated above.
When construing the policy language at issue here, we do so according to the long-standing rules of construction applicable to contracts generally. Gomolka v. State Auto. Mut. Ins. Co. (1982),70 Ohio St.2d 166, 167, 436 N.E.2d 1347, 1348. One of the most established rules of construction is that of restraint: "When the language of an insurance policy has a plain and ordinary meaning, it is unnecessary and impermissible for this court to resort to construction of that language." Travelers Indemnity Co. v. Reddick
(1974), 37 Ohio St.2d 119, 121. Karabin v. State Automobile Mut.Ins. Co. (1984), 10 Ohio St.3d 163, 166-67, 462 N.E.2d 403, 406.
Thus, in reviewing an insurance policy, words and phrases used therein "must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with apparent object and plain intent of the parties may be determined. * * * The insurer having prepared the policy must also be prepared to accept any reasonable interpretation, consistent with the foregoing, in favor of the insured. Gomolka, supra, at 167-168, 436 N.E.2d at 1348; Dealers Dairy Products Co. v. RoyalIns. Co. Ltd. (1960), 170 Ohio St. 336, 164 N.E.2d 745; NewAmsterdam Cas. Co. v. Johnson (1914), 91 Ohio St. 155, 157-58,110 N.E. 475. It must also be remembered however, "where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." King v.Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, 211,519 N.E.2d 1380, 1383.
As stated above, Marathon argues that the language "request, demand or order" means an explicit request that resulted in a "loss, cost or expense" to Marathon. Celina Mutual however, maintains that the request may be implied by threats and other actions and even if it may not be implied, an explicit request existed here and Marathon acted as a result of it thus resulting in a "loss, cost or expense" that is excluded under the policy.
Following the principles of contract construction enunciated above this Court is ever mindful of the necessary restraint that must be observed when interpreting contracts. Therefore, we will first look to the plain and ordinary meaning of the terms "request, order and demand". Both parties have stipulated that an order or demand did not exist. As a result, this court will focus on the meaning of the word, "request".
"Request" as defined by Black's Law Dictionary means "An asking or petition". American Heritage dictionary offers a similar definition, "to ask for". Both definitions seem to contemplate the common and ordinary meaning of request as a responsive overt act, an expression. Moreover, when "request" is read in conjunction with "demand, or order", words that import an active impetus, it becomes clear that the insurance company does not convey an intent to rely on implied or covert statements to trigger the exclusion.
Celina Mutual argues that the language used in its policy is not ambiguous and qualifies as an "absolute pollution exclusion". In so far as the trial court found the language used by the policy unambiguous we agree, however, by concluding that a request can be implied for exclusion purposes the trial court has resolved an ambiguity that does not exist. The words "request, demand or order" are by definition responsive overt acts and thus keeping their natural and commonly accepted meaning are "consistent with the apparent object and plain intent of the parties": to exclude payment of any "loss, cost or expense" that arises out of a "request, demand or order" to clean up polluted ground. The plain language of the policy does not exclude any "loss, cost or expense" resulting from the insured's or the injured party's voluntary remediation of polluted ground. Indeed had it intended to do so it would have included such language, however, it limited its exclusion to those damages arising out of a "request, demand or order".
Having decided that the "request" must be express, we now decide whether or not such a "request" was made. Should this court find that an express "request" was made and that "request" resulted in the damages sought by Marathon for clean up of the polluted property then the exclusion under Coverage A applies. However, should the record be devoid of any such request then the exclusion does not apply and Celina Mutual must indemnify Marathon for its expenses in remediation of the Site.
The trial court when entering judgment declaring that Celina Mutual had effectively excluded any recovery by Marathon for remediation of the Site relied solely on the implied request of the Schwietermans and the OEPA. The entry stated in pertinent part:
 "If there was not a formal demand or order to cleanup the gasoline, that was only because neither was necessary in light of the implicit request of Schwietermans and the OEPA."
Despite this Celina Mutual maintains that there were indeed explicit requests made during the course of the remediation. In its brief it claims that the following statements qualify as a "request" under the policy:
 There was a request made by Marathon to Interdyne to clean up the effects of pollutants;
 There was a demand for reimbursement of clean up costs by Marathon to Heitkamp.
 There was a request or demand by the Ohio EPA to Marathon to stay on site until the job was done to Ohio EPA's satisfaction. No other reasonable connotation can be placed upon Mr. Higgins' remark at the December 14, 1993 meeting. Certainly, Marathon understood them that way.
 Marathon was obligated by its own OPA 90 Plan to respond to and clean up emergency spills, releases or to see that others did so. In this case, it hired Interdyne to perform most of the clean-up and remediation of the spill site.
 Marathon's claim includes its costs and expenses incurred to clean up, monitor, test for, remediate, etc. the effects of pollutants (i.e gasoline).
We shall address each claimed "request" in order. First, according to the voluminous documents contained within the record, Marathon had an ongoing contract with Interdyne as part of its OPA 90 plan. However, there is no evidence in the record that Marathon made a "request, order or demand" that Interdyne be present. Celina relies solely on the existence of the contract. Moreover, even could we construe such a contract as an implied "request, demand or order" contrary to the intent of the policy, such "request, demand or order" did not result in the "loss, cost or expense" for which Marathon seeks indemnification as required by the language of the contract. Therefore, Celina's first argument is without merit.
Next, Celina Mutual claims that there was a demand made by Marathon to the Heitkamps for reimbursement of the remediation costs. However, if the lawsuit filed by Marathon against the Heitkamps for the negligent actions of their employee can be characterized as a demand the one must consider the language of the entire exclusion. The "loss, cost, or expense" must arise out of the "request, demand or order". Now should this demand made upon the Heitkamps and later upon Celina Mutual for reimbursement qualify then the demand must have resulted in the "loss, cost or expense" for which Marathon seeks indemnification, which, indeed it did not. In fact, that "loss, cost or expense" arose as damages in consequence of the admitted negligence of Heitkamp's employee. Therefore, Celina Mutual's argument fails here as well.
Celina Mutual also claims that there was a request or demand made by the Ohio EPA for Marathon to stay on the Site until the remediation was performed to their satisfaction. In making this claim Celina Mutual relies on the supposed statement made by Mr. Higgins of the Ohio EPA threatening Marathon's future successes with the EPA should they move out. However, not only does the record and depositions on appeal not support the existence of such statement, the implication of the purported statement is not contemplated by the policy as triggering the exclusion. To the contrary the following statements made by the EPA, employees of the insurance company, and Marathon employees, actually reinforce the fact that Marathon was acting in its own interest:
 Ty Koontz, Celina Group, Claims Analyst "The EPA person that I spoke with told me that Marathon was handling this clean-up * * * and that we should take it over the handling of it."
 Harold Rinehart, Marathon Ashland Pipeline, LLC, Health and Environmental Safety Personnel
 We were not being held by the state as the responsible person being forced to clean this up. Q. On what do you base that statement that the state was not holding Marathon responsible?
 A. An actual comment from Don Higgins during the meeting in Bowling Green where he came right out and told us that he could not make us clean it up.
Jerald M. Gerber, Ohio EPA, Emergency Response Scene Coordinator
 Q. You the Ohio EPA had no way of keeping Marathon there to make them do that, correct?
A. That's correct.
 Vicki May, Marathon Pipeline Co., Environmental and Safety Supervisor.
 Yes, we had a meeting with them (Ohio EPA) sometime later to talk about our long-term remediation plan. And we discussed, well, we would not do this, but we discussed the possibility that since we did not cause that, that we were not under any obligation legally to clean it up.
Q. Who was that discussion with?
A. Don Higgins.
Q. What did Mr. Higgins tell you?
A. He said, well, yes, that is true.
Q. That you did not have to clean the spill up?
 A. Yes. Because as he understood it, we were not the cause of it.
Next, Celina Mutual argues that the Oil Pollution Act of 1990 and the Marathon's OPA 90 plan required Marathon to respond. First and foremost, as stated earlier the Oil Pollution Act of 1990 does not require a response it merely mandates a procedural framework for emergency response. 33 U.S.C.A. § 2701-2761. Moreover, Marathon's OPA 90 plan merely outlines how it will respond to an emergency it doesn't mandate their response. Therefore, the Oil Pollution Act and Marathon's OPA 90 plan are not a "request, demand or order" as defined by the policy that resulted in the "loss, cost or expense" for which Marathon seeks indemnification.
Finally Celina Mutual argues that Marathon's claim simply because it contains expenses and costs related to the clean up of a pollutant, gasoline, that it qualifies as a request and is excluded from coverage by the policy. However, this argument is also without merit because the "loss, cost or expense" relating to the pollution clean up must arise out of a "request, demand or order". To say that the loss, because it included costs for clean up of a pollutant, was a "request" would add an unwritten, unexpressed term to the insurance contract.
After thorough review of the record this court is unable to find an express request, order or demand within the meaning of the Celina policy by anybody that Marathon clean up and remediate the Site. Therefore, we cannot say that the "loss, cost or expense" suffered by Marathon arose out of a "request, order or demand" and thus the claim is not excluded from Coverage A Section I. As a result, Marathon's second assignment of error is sustained.
Marathon's fourth assignment of error argues that the trial court erred when it failed to declare whether or not Marathon was entitled to recover the aggregate limits of the Celina Mutual policy totaling $600,000. However, Celina Mutual argues that because the damages all resulted from a single occurrence Marathon is subject to the $300,000 per occurrence limit.
This court has held that even where alternative theories of recovery exist under the same policy, the plaintiff must elect and may only recover under one theory for the same damages. We noted:
 "The doctrine of election applies where one wrongful act is charged and the plaintiff is entitled to treat it as having either of two natures. But the addition of a tort to separate and distinct in violation of contract, does not deprive the injured party of the right to complaint at the same time, of both wrongs. Of course he cannot recover double damages.
 In Dick v. Hyer (1916), 94 Ohio St. 351, the Ohio Supreme Court concluded that satisfaction of a claim by the pursuit of one remedy bars the subsequent pursuit of another consistent remedy by which the right might also have been enforced."
 Kabbaz v. Prudential Insurance Company of America (Dec. 29, 1988), Crawford County App. No. 3-86-27, unreported. Moreover, the policy contains a per occurrence limit of $300,000 and there was only one act of negligence that led to the property damage at issue here. Therefore, because we have decided that Marathon is not excluded from coverage by Section I Coverage A of the Celina Mutual policy it may only collect the per occurrence limit of $300,000. As a result, Marathon's third assignment of error, which claims that Marathon is also covered under Section I Coverage B for personal injury as a result of wrongful entry, is overruled to the extent that we have found coverage exists under Section I Coverage A.
Finding error prejudicial to Appellee Celina Mutual, in the particulars assigned and argued, the judgment of the Court of Common Pleas of Mercer County is reversed and remanded for further proceedings in accordance with this opinion.
Judgment reversed and cause remanded.
HADLEY, P.J., and SHAW, J., concur.