OPINION
MakGregor Management, Inc. filed suit against DCD Property Management for damages incurred as a result of DCD's termination of a property management agreement. DCD subsequently filed a counterclaim for breach of the agreement. After trial, the trial court ruled against MakGregor on its claim, and in favor of DCD on its counterclaim. On appeal, MakGregor contends that the trial court's determination that it breached the agreement is not supported by the record. It further contends that the trial court should have offset any award to DCD by the amount of damages owed to MakGregor.
We conclude that the record contains sufficient evidence to support the trial court's findings regarding MakGregor's breach of the agreement. We further conclude that the trial court did not err by awarding damages to DCD without any offset. Accordingly, the judgment of the trial court is Affirmed.
 I
Plaintiff-appellant MakGregor Management, Inc. is a property management company. Defendant-appellee, DCD Property Management is owned by Darrell Dewberry and Cathy Dewberry and in turn owns rental real estate located at 4354 and 4372 Fair Oaks in Dayton. The property owned by DCD consisted of two separate buildings. One building, located at 4354 Fair Oaks, had four apartments. The other building, which was located at 4372 Fair Oaks, had eight apartments. The buildings were separated by other properties not owned by the Dewberrys.
In February, 1999, DCD and MakGregor entered into a property management contract (hereinafter the "Agreement") whereby MakGregor agreed to assume management of DCD's rental properties. Pursuant to the Agreement, MakGregor received a management fee of twenty-five dollars per apartment per month. In exchange for this fee, MakGregor was required to collect rent, pay DCD's land contract payment, and provide maintenance and repairs associated with the property. However, DCD quickly became dissatisfied with MakGregor's performance, and on March 14, 1999, DCD sent a letter to MakGregor advising that the Agreement was to be terminated.
Thereafter, MakGregor filed suit alleging that DCD owed it $4,038.87 for expenses incurred prior to termination of the Agreement, and for its management fee for May. DCD filed an answer and a counterclaim in which it alleged that MakGregor had breached the terms of the Agreement, and sought money damages. Trial was held on March 1, 2000. The trial court, finding that MakGregor had breached the Agreement, ruled against MakGregor on its claims. The trial court also found that MakGregor had "wrongfully deducted $2,295.91 from DCD's escrow accounts," and awarded that amount to DCD on its counterclaim. From this judgment MakGregor appeals.
 II
The first assignment of error is as follow:
 THE TRIAL COURT ERRED IN RULING THAT MAKGREGOR BREACHED THE CONTRACT AND SHOULD RECEIVE NO BENEFIT THEREBY.
MakGregor contends that the trial court erred in finding that it breached the contract. Specifically, MakGregor refers to the following actions that the trial court found to constitute breaches of the Agreement: MakGregor (1) hired a resident manager without DCD's prior approval; (2) hired subcontractors without DCD's prior approval; (3) replaced carpet in one of the units without DCD's approval; and (4) failed to collect late fees on overdue rental payments. MakGregor argues that the "activities cited as breaches were authorized under the Agreement or were ratified by DCD."
Pursuant to the terms of the agreement, MakGregor reserved the right to place resident managers in buildings of ten apartments or more. MakGregor contends that the subject property consisted of twelve apartment units, and thus, was subject to the resident manager position. In fact, at trial, Heidenreich, a MakGregor employee, testified that MakGregor did not consider the two properties to be separate because they were located on the same street and were in "very close proximity to each other." Finally, MakGregor notes that Section 2 of the Agreement describes the DCD property as consisting of "the land, buildings, and other improvements located at 4372 Fair Oaks and 4354 Fair Oaks, Dayton, Ohio, and includes 12 units." Therefore, it argues that "by this language the parties contemplated that the property would be treated as one management unit with 12 units for purposes of the contract."
We are not persuaded by MakGregor's claim that the contract language authorized the hiring of a resident manager because it referred to the property as consisting of twelve units. We acknowledge that the description of the property does state that it consists of two properties comprising twelve units. However, the specific provision regarding resident managers clearly states that it is only applicable to buildings containing ten or more units. As previously noted, the subject property consisted of two buildings separated by other properties not owned by DCD. Both buildings had less than ten units. We note that the testimony given by Darrell Dewberry indicates that DCD did not consider the properties to be one — that they were to be viewed as separate properties.
We conclude that the contract did not provide for the use of a resident manager in this case. Even if the contract were susceptible of the construction urged by MakGregor, we note that any ambiguity would be construed against MakGregor as the contract's maker. Gomolka v. State Auto. Mut. Ins. Co. (1982), 70 Ohio St.2d 166, 167-168.
MakGregor next argues that even if the Agreement did not provide for the use of a resident manager at the DCD properties, the Dewberrys "ratified the placement by trying to control the duties of the resident manager that was put into place." Specifically, MakGregor notes that Darrell Dewberry attempted to contact the resident manager, and in fact, eventually met with her to discuss her responsibilities. Also, Heidenreich testified that he discussed hiring a resident manager with the Dewberrys, and that no objections were voiced.
However, the testimony presented by Darrell Dewberry indicates that he was not even aware that a resident manager had been hired until he was so informed by another tenant. He further testified that he and his wife made several unsuccessful attempts to contact MakGregor because the property was not being properly cared for. There is no indication that the Dewberrys ever acquiesced in, or approved of, the hiring of a resident manager.
"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, 280. In reviewing the claim, an appellate court must be guided by a presumption that the findings of the trier of fact were correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80. From the record before us, we conclude that there is sufficient evidence to support the trial court's finding that MakGregor breached the Agreement by hiring a resident manager.
We next address MakGregor's claim that it did not breach the Agreement when it hired independent contractors to perform cleaning, painting and other services. MakGregor admits that it "regularly hired Linda's Personal Touch to clean, paint, and do minor repairs to individual units." During the term of the Agreement, Linda's Personal Touch charged MakGregor $3,949 for its services performed on the subject properties.
The terms of the Agreement regarding maintenance and repair of the properties provides, in pertinent part, as follows:
 7. Maintenance and Repair. Agent [MakGregor] will cause the project be maintained [sic] and repaired in accordance with Owner's requirement local codes, and to be in a condition at all times acceptable to owner. Such repair and maintenance shall include but not be limited to cleaning, painting, decorating, plumbing, carpentry, grounds care and such other work as may be necessary. With regard thereto, the following provisions will apply:
 a. Special attention will be given to preventative maintenance, and to the extent feasible, the services of regular maintenance employees will be used.
 b. Subject to Owner's prior approval, Agent will contract with qualified independent contractor, for the maintenance and repairs beyond the capability of regular maintenance employees.
* * *
 d. Agent is authorized to purchase all materials, equipment, tools, appliances, supplies, and services necessary for proper maintenance and repair.
MakGregor contends that Section 7(d), which permitted it to purchase all "services necessary for proper maintenance and repair," authorized it to procure the services of Linda's Personal Touch. It further argues that DCD was aware that these services would be purchased. MakGregor claims that it routinely utilized the services of Linda's Personal Touch, and that the services were "reasonably necessary for the day-to-day maintenance" of the properties.
From our reading of the Agreement language, it appears that MakGregor held itself out as having regular maintenance employees, who would be responsible for routine maintenance such as cleaning and painting, and that it would use its employees unless the maintenance or repair was beyond their capabilities. Furthermore, the Agreement required MakGregor to obtain DCD's approval before hiring any independent contractor. While we note that Section 7(d) does authorize MakGregor to purchase necessary "services," its general language is not sufficient to override the specific language contained in Section 7(a) and (b) regarding the use of regular employees and the need to obtain prior approval for the use of independent contractors. Again, even were we inclined to find that the Agreement is susceptible of MakGregor's interpretation, ambiguity in that regard must be construed against MakGregor, the drafter of the Agreement.
Additionally, although MakGregor contends that DCD was aware that Linda's Personal Touch would be hired, the record includes testimony offered by the Dewberrys which disputes this claim. Since the trial court was in the best position to determine the credibility of the witnesses, we cannot say that it erred by failing to find that DCD approved of, or ratified, the use of independent contractors.
We next turn to the claim that the trial court erred by finding that MakGregor breached the Agreement by replacing carpet in the properties. The record shows that on February 20, 1999, MakGregor purchased carpet for two of the subject apartments. The total cost for the purchase was approximately $784. According to MakGregor, the replacement of carpet was a matter "clearly within its responsibility and discretion" under Section 7 of the Agreement.
Pursuant to Section 7(e) of the Agreement, any expenditure exceeding $750 "in any one instance for labor, materials, or otherwise * * *" must be approved by DCD. In this case, the carpet was purchased on the same day, and the expenditure was in excess of $750. Therefore, DCD's approval was required. Darrell Dewberry testified that he specifically told MakGregor not to replace the carpet in one of the apartments. The trial court, after hearing the witnesses, determined that DCD did not give approval for re-carpeting one of the apartments. Since the record contains evidence to support such a finding, we conclude that the trial court did not err by determining that MakGregor's decision to replace the carpet constituted a breach of the Agreement.
Finally, MakGregor contends that the trial court erred by finding it breached the Agreement by failing to collect late fees. This finding is supported by evidence in the record that some of the lease agreements provided for late fees, that some late fees were incurred, and that MakGregor failed to collect some of the late fees that DCD's tenants had incurred.
We conclude that the trial court did not err by finding that MakGregor breached the terms of the Agreement. Accordingly, the first assignment of error is overruled.
 III
The second assignment of error is as follows:
 THE TRIAL COURT ERRED IN GRANTING JUDGMENT TO DEFENDANT-APPELLEE ON ITS COUNTERCLAIM.
MakGregor's argument in relation to this assignment of error is somewhat confusing. However, it appears that the gist of its argument is based upon its contention that any amount of damages to which DCD may have been entitled should properly have been deducted from the amount of money MakGregor claims it was owed by DCD as damages.
We have reviewed the record in this case, and find that DCD presented sufficient evidence to support the trial court's award of damages to it. Furthermore, as noted in Part II above, we agree with the trial court's determination that MakGregor had breached the terms of the agreement. Since MakGregor's claimed damages stemmed from the costs incurred by reason of its use of independent contractors in violation of the Agreement, the trial court correctly found that it was not entitled to those amounts as damages.[1] Therefore, we conclude that there are no damages owed to MakGregor from which to deduct the amounts awarded to DCD.
The second assignment of error is overruled.
 IV
Both assignments of error having been overruled, the judgment of the trial court is Affirmed.
 _____________ FAIN, J.
WOLFF, P.J., and GRADY, J., concur.
[1] MakGregor also claimed that it was entitled to $150 in management fees for the month of May, 1999. However, the record supports the trial court's finding that the Agreement was terminated in April, and that MakGregor was thus, not entitled to the fee.