OPINION
Plaintiffs-appellants, Barbara Herschell, individually and as administrator of the estate of Chris D. Herschell, deceased, appeal the April 12, 2001 judgment entry by the Lake County Court of Common Pleas, denying appellants' motion for summary judgment and granting summary judgment in favor of defendants-appellees, Mitchell Rudolph ("Rudolph"), Excalibur Auto Body ("Excalibur"), and Meridian Mutual Insurance Company ("Meridian"). For the following reasons, we affirm the decision of the lower court.
On March 17, 1997, Chris D. Herschell ("decedent") was involved in a fatal automobile accident. Decedent was a passenger in an automobile operated by Daniel J. Gomez ("Gomez"). Gomez was also killed in the accident. Gomez was uninsured. Appellants received three hundred thousand dollars ($300,000) from the settlement of a claim for uninsured motorist coverage under a policy issued by State Farm Insurance Company.
Before his death, decedent was an employee of Excalibur. Rudolph owned and operated Excalibur, a sole proprietorship, located in Willoughby, Ohio.[1] The fatal accident occurred while decedent was off-duty. Excalibur did not own the vehicle in which decedent was a passenger. At the time of the accident, Rudolph, d.b.a. Excalibur, was insured under a commercial insurance policy with Meridian. The policy contained a provision for underinsured motorist coverage in the amount of three hundred thousand dollars ($300,000) per accident. Appellants filed an underinsured motorist claim under the policy; however, it was denied.
On August 14, 2000, appellants filed an amended complaint, naming Rudolph, Excalibur and Meridian as defendants. Appellants sought a declaratory judgment, finding that they were entitled to compensation under the Meridian policy pursuant to Scott-Pontzer v. Liberty Mut. FireIns. Co. (1999), 85 Ohio St.3d 660. Appellants attached a copy of the declarations page of the policy. The declarations page listed Rudolph, d.b.a. Excalibur, as the named insured and stated that the form of the business was an individual.
On September 20, 2000, Meridian filed an answer along with a counterclaim. Meridian explained that Scott-Pontzer held that an employee of a corporate insured could make a claim for underinsured motorist coverage under his employer's corporate policy. Meridian stressed that, at the time of decedent's death, Excalibur was a sole proprietorship. Meridian asserted various defenses including, among others, that Excalibur was not a legally cognizable entity so it could not be sued. Meridian's counterclaim sought a declaratory judgment, finding that neither decedent nor Barbara Herschell qualified as an insured under the underinsured motorist coverage provision of the policy.
Appellants filed an answer to Meridian's counterclaim on September 28, 2000. Appellants contended that the legal status of the employer was not the deciding issue in Scott-Pontzer. Appellants again argued that they had a valid underinsured motorist claim pursuant to Scott-Pontzer.
Subsequently, on November 24, 2000, appellants filed a motion for summary judgment. Appellants asserted that decedent and his family fit the definition of an "insured" since the language of the policy inScott-Ponzter was identical to the Meridian policy. Appellants added that, like Scott-Pontzer, nothing in the Meridian policy required an insured to be acting within the course and scope of his employment. Appellants contended that they were entitled to underinsured motorist coverage under the commercial insurance policy that was issued to the business entity, Rudolph, d.b.a. Excalibur. Appellants attached a copy of the policy.
Thereafter, on December 13, 2000, appellees filed a brief in opposition to appellants' motion for summary judgment. Appellees also filed a cross-motion for summary judgment. Appellees argued that Scott-Pontzer
was not applicable because the employer in Scott-Pontzer was a corporation whereas the policy at hand was issued to an individual, Rudolph, d.b.a. Excalibur, a sole proprietorship. Appellees added that Ohio law recognized a fundamental difference between a corporation and a sole proprietorship in that a sole proprietor, doing business under a trade name, did not have a separate legal existence. Appellees contended that the ambiguity that was inherent in Scott-Pontzer was not present in the instant case because the declarations page stated that it was issued to an individual. Appellees further argued that even if an ambiguity existed, the rules of construction dictated that, in construing a policy, the ultimate goal was to ascertain the intent of the parties. Appellees attached, among other things, portions of the policy and the affidavit of Rudolph. In his affidavit, Rudolph stated that the policy was for his business and was issued to him, d.b.a. Excalibur. Rudolph explained that it was not his intention to provide coverage for his employees unless they were in the course and scope of their employment and driving vehicles that he owned.On December 18, 2000, appellants filed a response to appellees' cross-motion for summary judgment. Appellants argued that appellees misinterpreted Scott-Pontzer because the type of policy determined the type of coverage. Appellants noted that the Meridian policy was a commercial policy to insure Rudolph's commercial enterprise, not his family.
In a judgment entry filed on April 12, 2001, the trial court granted appellees' cross-motion for summary judgment and denied appellants' motion for summary judgment. The trial court concluded that the holding ofScott-Pontzer was not applicable. The trial court emphasized that the policy was issued to Rudolph, d.b.a. Excalibur, a sole proprietorship. The trial court added that Rudolph procured the insurance policy to protect himself and his commercial business.[2]
On April 30, 2001, appellants filed a timely notice of appeal, asserting the following assignment of error:
 "The trial court erred, as a matter of law, by granting summary judgment against plaintiff-appellants in this declaratory judgment action."
 Appellants' sole assignment of error centers on the applicability of Scott-Pontzer, supra, 85 Ohio St.3d 660
to the facts of the instant case. Appellants contend that the trial court's decision is irreconcilable with Scott-Pontzer.
We begin with the applicable law for reviewing a motion for summary judgment. On appeal, a reviewing court conducts a de novo review of a trial court's summary judgment entry. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. A de novo review requires an independent review of the trial court's decision without any deference to it. Brownv. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. Summary judgment is a procedural device designed to avoid a formal trial when there is nothing left to litigate. Norris v. Ohio Std. Oil Co. (1982),70 Ohio St.2d 1. Civ.R. 56(C) provides that summary judgment is proper when (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, viewing the evidence most strongly in favor of the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the non-moving party. SeeZivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370;State ex rel. Morley v. Lordi (1995), 72 Ohio St.3d 510, 512.
Once a moving party satisfies their burden of supporting their motion for summary judgment with sufficient and acceptable evidence, pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine issue" exists to be litigated for trial. State ex rel. Zimmerman v. Tompkins (1996),75 Ohio St.3d 447, 449. A "genuine issue" exists when a reasonable jury could return a verdict for the non-moving party based upon the evidence.Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248. The principal purpose for Civ.R. 56(E) is to allow the court to analyze the evidence in order to determine whether there exists an actual need for a formal trial. Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau (2000),88 Ohio St.3d 292, 300.
In the case sub judice, before making an independent determination as to whether the trial court appropriately granted appellees' motion for summary judgment and properly denied appellants' motion for summary judgment, we must address the underlying issue, concerning the applicability of Scott-Pontzer, supra.
In Scott-Ponzter, 85 Ohio St.3d 660, Christopher Pontzer was killed in an automobile accident while driving an automobile owned by his wife. The collision was caused by the negligence of another driver. Pontzer was an employee of Superior Dairy, Inc. Pontzer was off-duty at the time of the accident. Superior Dairy, Inc. was insured under a commercial automobile insurance policy with Liberty Mutual Fire Insurance Company ("Liberty Fire"), which contained a provision for underinsured motorist coverage. Superior Dairy, Inc. was also insured under an "umbrella/excess" insurance policy with Liberty Mutual Insurance Company ("Liberty Mutual"). Pontzer's wife, as surviving spouse and executor of his estate, claimed that she was entitled to underinsured motorist benefits under the Liberty Fire automobile insurance policy and any other benefits under the Liberty Mutual umbrella policy.
As to the Liberty Fire policy, the declarations page named Superior Dairy, Inc. as the named insured. The business auto coverage form of the policy stated that, throughout the policy, the words "you" and "your" referred to the named insured shown in the declarations. The policy contained an Ohio uninsured motorist coverage form that defined "insured," for purposes of underinsured motorist coverage, as: (1) you, (2) if you are an individual, any family member, (3) anyone else occupying a covered auto or a temporary substitute for a covered auto where the covered auto is out of service because of a breakdown, repair, servicing, loss or destruction, or (4) anyone who is entitled to recover damages because of bodily injury sustained by another insured.
The Supreme Court of Ohio determined that the language of the Liberty Fire policy was subject to various interpretations, making it ambiguous.Scott-Pontzer at 664. The Court explained that where insurance contract provisions are susceptible to more than one interpretation, they are construed strictly against the insurer and liberally in favor of the insured. Id., citing King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, syllabus. The Court concluded that the policy language could be interpreted to include company employees; however, even if "you" referred solely to Superior Dairy, Inc., it did not foreclose Pontzer from being an insured under the underinsured motorist coverage of the Liberty Fire policy. Id. The Supreme Court of Ohio reasoned that:
 "It would be contrary to previous dictates of this court for us now to interpret the policy language at issue here as providing underinsured motorist protection solely to a corporation without any regard to persons. * * * Rather, it would be reasonable to conclude that `you,' while referring to Superior Dairy, also includes Superior's employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons — including to the corporation's employees."
 Id. at 664. The Court stated that in drafting an insurance contract, an insurer must do it with language that is clear and unambiguous, comporting with the requirements of the law. Id.
As to the Liberty Mutual "umbrella/excess" insurance policy, the Supreme Court of Ohio stated that Liberty Mutual failed to offer uninsured/underinsured motorist coverage under that policy.Scott-Pontzer at 665. The Court explained that excess liability insurance must comport with R.C. 3937.18 in that uninsured/underinsured motorist coverage must be tendered. Id., citing Duriak v. Globe Am.Cas. Co. (1986), 28 Ohio St.3d 70, 72. If an insurer fails to offer such coverage, such coverage is provided by operation of law pursuant to R.C.3937.18. Id., citing Gyori v. Johnston Coca-Cola Bottling Group
(1996), 76 Ohio St.3d 565, 568. The Supreme Court of Ohio concluded that the Liberty Mutual umbrella/excess insurance policy included underinsured motorist coverage, mandated by law, since there was no showing that underinsured coverage was offered. Id. Consequently, the Court determined that Pontzer was also an insured under the umbrella/excess insurance policy. Scott-Pontzer, supra, 85 Ohio St.3d at 665.
On the other hand, unlike Scott-Pontzer, supra, which involved a corporate employer, Reinbolt v. Gloor (Sept. 10, 2001), Henry App. No. 7-01-05, unreported, 2001 Ohio App. LEXIS 3992 (discretionary appeal not allowed, 94 Ohio St.3d 1412, 2001 Ohio LEXIS 3232), involved a sole proprietorship. The Reinbolt court addressed similar arguments as in the instant case.
In Reinbolt, Justin Reinbolt was seriously injured while a passenger in an automobile owned by a friend. Reinbolt was employed by Northwest Landscape Service ("Northwest"), a sole proprietorship that was owned and operated by Ronald Foor ("Foor"). Reinbolt was not acting in the scope of his employment during the accident. Westfield Insurance Company ("Westfield") provided commercial insurance coverage to Reinbolt's employer, including, business auto, uninsured/underinsured motorist and umbrella coverage. The "named insured" under the policy was "Ronald Foor d.b.a. Northwest Landscape Service." The "named insured" was defined in the common policy declarations as an "individual."
Similar to the instant case, in Reinbolt, the plaintiff argued that, pursuant to Scott-Pontzer, Reinbolt was an insured under the policy and entitled to the uninsured/underinsured motorist coverage. Reinbolt at 3. The plaintiff contended that Scott-Pontzer stood for the proposition that underinsured motorist coverage was included in a commercial automobile insurance policy that was issued to any type of employer,
which defined an "insured" as "you" or "if you are an individual, any family member." Id. at 9.
The Third Appellate District disagreed and determined that Reinbolt was excluded from coverage. Id. at 14-15. The court reasoned that a soleproprietorship had no legal identity separate from the individual whoowned it, and an individual who did business as a sole proprietor, underone or several names, remained one person. Id. at 12, citing Pattersonv. V M Auto Body (1992), 63 Ohio St.3d 573, 574. The Third AppellateDistrict stated that Foor and Northwest remain one person even though Foor did business using the name Northwest, a legal nonentity, having no separate legal identity. Reinbolt at 12-13.
The appellate court further explained that, unlike Scott-Pontzer, no ambiguity arose when reading the definition of an "insured" in conjunction with the provisions of the policy since Ohio law recognized a sole proprietorship as a single individual. Id. at 14. The Third Appellate District stated that the intent of the parties was evident from the policy's clear and unambiguous language; therefore, the court would not read into the insurance contract a meaning not contemplated or provided by the parties. Id.
In the case before us, it is undisputed that the automobile in which decedent was a passenger was not owned by Rudolph, d.b.a. Excalibur. Decedent was off-duty at the time of the fatal accident. The declarations page of the Meridian policy states that the named insured is "Rudolph, Mitchell J dba Excalibur Body Frame." The form of the business is listed as an "individual." The "garage coverage form" states that, throughout the policy, the terms "you" and "your" refer to the named insured in the declarations page. The policy includes a provision for uninsured motorist coverage in the amount of three hundred thousand dollars ($300,000) per accident, which provides the following definition:
"B. WHO IS AN INSURED
"1. You.
"2. If you are an individual, any `family member'.
 "3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' The covered `auto' must be out of service because of its breakdown, repair, servicing, loss, or destruction.
 "4. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured.'"
 A "family member" is defined as a person related by blood, marriage, or adoption, residing in "your" household.
To determine whether the terms of a contract are ambiguous, a court must generally give terms and phrases their plain, ordinary, natural, or commonly accepted meaning. Gomolka v. State Auto. Mut. Ins. (1982),70 Ohio St.2d 166, 167-168. An insurance policy is only ambiguous if its terms are subject to more than one reasonable interpretation. Hacker v.Dickman (1996), 75 Ohio St.3d 118, 119-120. Where an insurance contract is clear and unambiguous, its interpretation is a matter of law. Leberv. Smith (1994), 70 Ohio St.3d 548, 533. Only when an insurance contract is ambiguous can the ambiguity be resolved in favor of an insured.King, supra, 35 Ohio St.3d 208, syllabus; see, also, Lane v. Grange Mut.Companies (1989), 45 Ohio St.3d 63, 65.
We are persuaded by the sound reasoning of the Third Appellate District in Reinbolt, supra, Henry App. No. 7-01-05, unreported, 2001 Ohio App. LEXIS 3992. The applicability of Scott-Pontzer, supra, is limited to corporate entities where ambiguity arises in the context of an insurance policy. In Scott-Pontzer at 664, the Supreme Court of Ohio explained that a corporation can only act by and through real live persons since it cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. However, a sole proprietorship and a sole proprietor remain the same individual. Unlike a corporation, a sole proprietorship does not have an identity separate from the individual who owns it. When "d.b.a." (doing business as) is used, there is no legal distinction between the individual and the business entity since it is merely a descriptive of the person who does business under some other name. Possv. Morris (Mar. 29, 1996), Ashtabula App. No. 94-A-0042, unreported, 1996 Ohio App. LEXIS 1210, at 7-8.
In the instant case, similar to Reinbolt, Rudolph and Excalibur have no separate legal identity and remain a single person. Thus, ambiguity does not arise when reading the definition of "who is an insured" under the uninsured motorist coverage provision in conjunction with the other provisions of the Meridian policy. The garage coverage form provides that the terms "you" and "your" refer to the named insured in the declarations page, which lists Rudolph, d.b.a. Excalibur. Unlike Scott-Pontzer, such language does not create more than one reasonable interpretation under the uninsured motorist provision. We may not substitute a different meaning when the provisions of an insurance policy are unambiguous. SeeGomolka, supra. Further, Meridian satisfied the requirements of R.C.3937.18 since the policy at issue includes an uninsured motorist coverage provision. Obviously, Meridian offered such coverage and Rudolph, d.b.a. Excalibur, accepted it.
Briefly, subsequent to filling their appellate briefs, appellants submitted Shropshire v. EMC/Hamilton Mut. Ins. Co. (Oct. 5, 2001), Montgomery App. Nos. 18803 and 18814, unreported, 2001 Ohio App. LEXIS 4493, as supplemental authority. However, Shropshire can be factually distinguished from the instant case. Unlike Shropshire, the commercial insurance policy at issue in the instant case contains a provision for uninsured/underinsured motorist coverage, satisfying R.C. 3927.18. InShropshire, the Second Appellate District determined that Shropshire was an insured of his employer's commercial insurance policy under the uninsured/underinsured motorist coverage that arose by operation of law.Id. at 9-10. The appellate court explained that the policy did not contain an expressed provision of uninsured/underinsured motorist coverage and the insurance company did not offer such coverage. Id. at 4. Further, the instant case involves a vehicle that is not owned by Rudolph, the sole proprietor. However, in Shropshire, Shropshire, while on personal business, was injured when he was riding a motorcycle owned by one of the partners of the partnership that employed him. Id. at 1.
Additionally, appellees filed Geren v. Westfield Ins. Co. (Mar. 8, 2002), Lucas App. No. L-01-1398, unreported, 2002 Ohio App. LEXIS 969, as supplemental authority. In Geren, the Sixth Appellate District determined that the reasoning of Scott-Pontzer, supra, was not applicable to a claim for uninsured/underinsured motorist benefits sought by an employee of a partnership. Id. at 9. The appellate court reasoned that a partnership was an aggregate of individuals and did not constitute a separate legal entity from its partners. Id. at 6, citing Arpadi v.First MSP Corp. (1994), 68 Ohio St.3d 453, paragraph one of the syllabus.
Accordingly, without giving any deference to the trial court's decision, upon thoroughly considering the parties' motions for summary judgment, regarding the applicability of Scott-Pontzer, construing the evidence that was before the trial court in a light most favorable to the non-moving party for each motion, we conclude that, there does not remain a genuine issue of fact for a formal trial. Reasonable minds can come to but one conclusion, concerning the applicability of Scott-Pontzer to the facts of the instant case. As explained above, the holding ofScott-Pontzer is limited to a corporate entity, which is a separate legal entity unlike a sole proprietorship. This conclusion is adverse to appellants. As such, pursuant to Civ.R. 56(C), the trial court properly granted appellees' cross-motion for summary judgment and correctly denied appellants' motion for summary judgment.
For the foregoing reasons, appellants' sole assignment of error is without merit. The judgment of the Lake County Court of Common Pleas is hereby affirmed.
CHRISTLEY, P.J., NADER, J., concur.
[1] Subsequently, on March 8, 2000, Rudolph incorporated Excalibur.
[2] On April 24, 2001, a nunc pro tunc judgment entry was filed to correct a typographical error in the April 12, 2001 judgment entry.