[Cite as *Niemeyer v. W. Res. Mut. Cas. Co.*, 2010-Ohio-1710.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

DAVID L. NIEMEYER, ET AL.,

    PLAINTIFFS-APPELLEES,

    v.                                                        CASE NO.  12-09-03

WESTERN RESERVE MUTUAL
CASUALTY COMPANY, ET AL.,

    DEFENDANTS-APPELLEES,
    -and-                                                   ERRATUM TO OPINION

FEROEN J. BETTS, ET AL.,

    DEFENDANTS-APPELLANTS.


Appeal from Putnam County Common Pleas Court
Trial Court No. 08-CV-200

Judgment Affirmed

Date of Decision:   April 19, 2010


APPEARANCES:

    *Steven P. Collier*  for Appellant, Feroen J. Betts, Admr.

    *David W. Stuckey*  for Appellant, Caroline Arend, Admr.

*James E. Yavorcik* **for Appellant, Timothy E. Berta**

*John A. Smalley* **for Appellants, Askins and Holp, Co-Admr.**

*Douglas P. Desjardins* **for Appellant Geneva Williams, Admr.**

*Frank E. Todaro* **for Appellee, David L. Niemeyer**

*Ronald A. Rispo* **for Appellee, Western Reserve Mutual Cas. Co.**

*David L. Jarrett* **for Appellee, Western Reserve Mutual Cas. Co.**

**WILLAMOWSKI, P.J.,**

**{¶1}** The Defendants-Appellants ("Appellants" or "the Injured Defendants") appeal the judgment of the Putnam County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee, Western Reserve Mutual Casualty Company, et al. ("Western Reserve") and denying Appellants' cross motion for summary judgment on the questions of coverage provided by an insurance policy issued by Western Reserve. For the reasons set forth below, the judgment is affirmed.

**{¶2}** This case involves a declaratory-judgment action which seeks to clarify the parties' rights and responsibilities concerning insurance coverage for a March 2, 2007, bus crash involving the Bluffton University baseball team. The accident occurred in Atlanta, Georgia, when a chartered bus was taking thirty three members and coaches of the Bluffton University baseball team to play a series of

games in Sarasota, Florida. The crash killed five baseball players, bus driver Jerome Niemeyer, and Mr. Niemeyer's wife, Jean Niemeyer. Many other occupants of the bus were injured and numerous lawsuits have been filed in response to the accident.

{¶3} The bus carrying the baseball team was owned by Partnership Financial Services, Inc. ("Partnership"); was leased from Partnership by Executive Coach Luxury Travel, Inc. ("Executive Coach"); and was chartered out to Bluffton University. Mr. Niemeyer was an employee of Executive Coach and was driving the motor coach when the accident occurred. At the time of the accident, Mr. Niemeyer had a personal automobile policy issued by Lightning Rod Mutual Insurance Company ("Lightning Rod"), with liability limits of three-hundred thousand dollars for each accident. Additionally, Mr. Niemeyer had a personal umbrella liability policy issued by Western Reserve, Policy No. WPX3440590116, with liability limits of one million dollars each occurrence. ("the Western Reserve Policy" or "the policy").

{¶4} In September 2008, Plaintiff David L. Niemeyer, Executor of the Estate of Jean Niemeyer ("Executor"), filed a complaint seeking a judgment declaring that insurance coverage existed under the two insurance policies purchased by the Niemeyers. The action was filed against two distinct classes of defendants: (1) the two insurance companies that issued insurance policies to the

Niemeyers, Western Reserve (Defendant-Appellee) and Lighting Rod; and (2) the Defendants-Appellants, who are the players and coaches who suffered injuries in the crash plus the estates of the deceased players ("the Injured Defendants" or "Appellants"). In addition to the Executor's complaint, the Injured Defendants filed a cross claim against the insurance companies, restating the Executor's request for a judgment declaring that insurance coverage exists.

{¶5} Western Reserve filed a motion for summary judgment on the coverage issues on behalf of itself and Lightning Rod, and the Injured Defendants subsequently filed their cross motion for summary judgment, but only against Western Reserve. Appellants did not pursue their claim for coverage under the Lightning Rod Policy; and therefore, Lightning Rod is not a party to this appeal.[1]

{¶6} In its motion for summary judgment, Western Reserve contended that coverage did not exist under the policy because the bus, driven by Mr. Niemeyer, was not an "auto" as that term was defined in the Western Reserve Policy. And furthermore, coverage was excluded because the vehicle was being operated as a "public or livery conveyance." The trial court found that the bus was not an "auto" as defined by the Western Reserve Policy, and thus, there was no coverage. The trial court granted summary judgment in favor of Western Reserve and denied the Injured Defendants/Appellants' motion. In its decision, the trial

Case No. 12-09-03

court stated:

> **Common parlance would not hold that a bus is a private passenger motor vehicle. The common understanding of private passenger motor vehicle is an automobile capable of carrying a limited number of people; for example a family car. Mr. Niemeyer was operating a bus, which is not a private passenger motor vehicle, for business purposes. As a result, coverage would be excluded under this section.**

Judgment Entry, May 4, 2009, p.3, R.23. Having determined that coverage did not exist because the "bus" was not an "auto," the trial court did not review the "public or livery conveyance" issue. It is from this decision that the Injured Defendants/Appellants now appeal, setting forth the following two assignments of error for our review.

### First Assignment of Error

**The trial court erred when it held that the Executive Coach bus was not a "private passenger motor vehicle," as that phrase is used in the Western Reserve Policy.**

### Second Assignment of Error

**The trial court erred when it denied Defendant-Appellants' motion for summary judgment and granted [Western Reserve's] motion.**

{¶7} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175, 722 N.E.2d 108. This review of a trial court's grant of summary judgment is done

---

[1] Apparently the reason that the claim against Lightning Rod was not pursued was because "auto" was *not* a defined term in the Lightning Rod policy. Therefore, utilizing the common and dictionary definitions of

independently and without any deference to the trial court. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶5. A reviewing court must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court did not consider those grounds. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41-42, 654 N.E.2d 1327.

{¶8} Summary judgment is appropriate when, looking at the evidence as a whole: (1) no genuine issues of material fact remain to be litigated; (2) construing the evidence most strongly in favor of the nonmoving party, it appears that reasonable minds could only conclude in favor of the moving party; and, (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chemical Corp.*, 73 Ohio St.3d 679, 686-87, 1995-Ohio-286, 653 N.E.2d 1196.

{¶9} Insurance policies are contracts and their interpretation is a matter of law for the court. *City of Sharonville v. Am. Employers Ins. Co.,* 109 Ohio St.3d 186, 187, 2006-Ohio-2180, 846 N.E.2d 833, ¶6, citing *Alexander v. Buckeye Pipe Line Co.* (1978)*,* 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus. Contract terms are to be given their plain and ordinary meaning. Id. Insurance coverage is determined by reasonably construing the contract "in

---

auto and automobile, the Executive Coach "bus" was not covered under that particular policy.

conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380. "Where provisions of a contract of insurance are reasonably susceptible to more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." Id. at the syllabus (citations omitted). However, where the intent of the parties to a contract is evident from the clear and unambiguous language used, a court must not read into the contract a meaning not contemplated or placed there by an act of the parties to the contract. *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 168, 436 N.E.2d 1347. "Although, as a rule, a policy of insurance that is reasonably open to different interpretations will be construed most favorably for the insured, that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶14, quoting *Morfoot v. Stake* (1963), 174 Ohio St. 506, 23 O.O.2d 144, 190 N.E.2d 573, paragraph one of the syllabus.

{¶10} The Western Reserve Policy provided personal umbrella liability insurance coverage to its insured, the Niemeyers, as follows:

**II.  Coverages**

**A.  Insuring Agreement**

**We will pay damages, in excess of the "retained limit", for:**

**1. "Bodily injury" or "property damage" for which an "insured" becomes legally liable due to an "occurrence" to which this insurance applies \*\*\*.**

{¶11} Although Section II.A.1 would appear to provide coverage for this accident, Western Reserve contends that an exclusion for business activities bars coverage. The relevant part of the exclusion provides:

**III. Exclusions**

**A. The coverages provided by this policy do not apply to:**

**\*\*\***

**4. "Bodily injury", "personal injury" or "property damage" arising out of or in connection with a "business" engaged in by an "insured". This exclusion (A.4.) applies but is not limited to an act or omission, regardless of its nature or circumstances, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".**

**However, this exclusion (A.4) does not apply to:**

**\*\*\***
**e. The use of an "auto" for "business" purposes, other than an auto business, by an "insured". However, we do not provide coverage for liability arising out of the ownership or operation of an "auto" while it is being used as a public or livery conveyance. This exclusion (A.4.e) does not apply to share-the-expense car pool \*\*\*.**

{¶12} Based on the above, insurance coverage is excluded where the injury or damages at issue arose "out of or in connection with a 'business' engaged in by an 'insured.'" (Western Reserve Policy Section III.A.4.) The parties do not

dispute that Mr. Niemeyer was engaged in a business activity at the time of the accident. However, under the *exception to the exclusion* in Section III.A.4.e, coverage does exist if the injury or damages arose from "[t]he use of an 'auto' for 'business' purposes" as long as the "auto" is not being used "as a public or livery conveyance." Therefore, the two primary issues that are determinative as to whether or not there is coverage under this policy are: (1) whether the vehicle Mr. Niemeyer was driving was an "auto" as defined by the policy; and, (2) whether the vehicle was being used as a "public or livery conveyance."

{¶13} "Auto" is defined in Section I.D.1 of the Western Reserve Policy as "[a] private passenger motor vehicle, motorcycle, moped or motor home ***." This broad definition does not limit the term "auto" to cars or even to vehicles with four wheels. Appellants contend that the Executive Coach is an "auto," as that term is specifically defined in the policy.

{¶14} The phrase "private passenger motor vehicle" and the individual words, "private," "passenger," and "motor vehicle," are not defined in the policy. Ohio law requires that where words and phrases in an insurance policy are not specifically defined, they should be given their commonly accepted meaning. *Gomolka*, 70 Ohio St.2d at 167-68. In arguing that the Executive Coach bus qualified as a "private passenger motor vehicle," Appellants state that a bus is a motor vehicle, pursuant to definition in R.C. 4501.01(I) which states:

> **"Bus" means any *motor vehicle* that has motor power and is designed and used for carrying more than nine passengers. (Emphasis added.)**

Appellants next argue, and Western Reserve does not dispute, that a bus is clearly designed for carrying "passengers." See, e.g., R.C. 4501.01(I) (defining "bus" as "any motor vehicle that has motor power and is designed and used for carrying more than nine *passengers* ***.") (Emphasis added.)

{¶15} And finally, Appellants argue that the Executive Coach bus qualified as a "private" motor vehicle because the bus was privately owned by Partnership Financial Services; it was privately leased from Partnership by Executive Coach; it was contracted for the private use of the baseball team of Bluffton University (a private educational institution); and, it was under the team's private and exclusive use for the duration of the contract.

{¶16} Appellants' proffered analysis of the meaning of every individual word in the policy's definition of "auto" sounds reasonable at each step of the process. However, that may not be the proper way to determine the meaning of the entire phrase "private passenger motor vehicle" *taken as a whole*. Although that terminology was not defined in Western Reserve's policy, the exact same phrase is used repeatedly to describe various *automobile* insurance regulations and vehicular laws in over thirty-five states, including Ohio. See, e.g., R.C. 3937.30(C) (Ohio); A.R.S. § 20-117(2) (Arizona); Cal.Ins.Code § 1758.89

(California); C.G.S.A. § 38a-363 (Connecticut); F.S.A. § 627.732(3)(a) (Florida); KRS § 304.39.087 (Kentucky); NY INS § 3440 (New York). The term/phrase "private passenger motor vehicle" is not specifically defined in some states and is given various definitions in other states.[2] However, we have not found any definition which includes a chartered "bus." See, e.g., *Walsh v. Starr Transit*, N.J. Super. A.D., 2008 WL 199740, *3 (finding that because plaintiff was a "bus passenger," plaintiff was ineligible for coverage under automobile statutes where an "automobile" was defined as "a private passenger automobile *** that is owned or hired and is [not] used as a public or livery conveyance for passengers.")

{¶17} In Ohio, R.C. 3937.30 states that an "'*automobile* insurance policy' means an insurance policy delivered or issued in this state or covering a motor

---

[2] A small sample of the definitions of "private passenger motor vehicle" in various state statues includes: S.C. Code § 56-3-630 ("The Department of Motor Vehicles shall classify as a private passenger motor vehicle every motor vehicle which is designed, used, and maintained for the transportation of ten or fewer persons and trucks having an empty weight of nine thousand pounds or less and a gross weight of eleven thousand pounds or less, except a motorcycle, motorcycle three-wheel vehicle, or motor-driven cycle."); A.R.S. § 20-117 ("'Private passenger motor vehicle' means any vehicle that is rated or insured under a family automobile policy, standard automobile policy, personal automobile policy or similar private passenger automobile policy written for personal use"); F.S.A. § 627.732 (" (a) A 'private passenger motor vehicle,' which is any motor vehicle which is a sedan, station wagon, or jeep-type vehicle and, if not used primarily for occupational, professional, or business purposes, a motor vehicle of the pickup, panel, van, camper, or motor home type. (b) A 'commercial motor vehicle,' which is any motor vehicle which is not a private passenger motor vehicle."); Cal.Ins.Code § 1758.89 ("A private passenger motor vehicle, including a passenger van, minivan, or sports utility vehicle."); C.G.S.A. § 38a-363(e) ("'Private passenger motor vehicle' means a: (1) Private passenger type automobile; (2) station-wagon-type automobile; (3) camper-type motor vehicle; (4) high-mileage-type motor vehicle, as defined in section 14-1; (5) truck-type motor vehicle with a load capacity of fifteen hundred pounds or less, registered as a passenger motor vehicle, as defined in said section, or as a passenger and commercial motor vehicle, as defined in said section, or used for farming purposes; or (6) a vehicle with a commercial registration, as defined in subdivision (12) of said section. It does not include a motorcycle or motor vehicle used as a public or livery conveyance.")

vehicle required to be registered in this state which: *** (C) Insures only *private passenger motor vehicles* or other four-wheeled motor vehicles which are classified or rated as private passenger vehicles and are not used as public or private livery, or rental conveyances ***." (Emphasis added.) In *Bollinger v. Empire Fire & Marine Ins. Co.*, the Fourth District Court of Appeals found that:

> **although "private passenger motor vehicle" is not defined in R.C. Chapter 3937, we note that "passenger car" is defined in R.C. 4501.01(E) as follows:**
>
> **"Passenger car" means any motor vehicle designed and used for carrying not more than nine persons, including any motor vehicle designed and used for carrying not more than fifteen persons in a ridesharing arrangement."**

*Bollinger*, 4th Dist. No. 1785, 1986 WL 14896, *4. In concluding that the definition of "private passenger motor vehicle" did not include tractors and tractor trucks, the court stated that the purpose of those vehicles was "separate and distinct from the types of vehicles that have thus been held in Ohio to be 'private passenger motor vehicle(s)', that is, cars and motorcycles." Id. See, also, *Smith v. Air-Ride, Inc.*, 10th Dist. No. 02AP-719, 2003-Ohio-1519, ¶73

{¶18} Taken as a whole, the phrase "private passenger motor vehicle" is generally used to reference vehicles more closely resembling the personal family automobile rather than a chartered bus involved in the interstate transportation of passengers for hire. However, it is not necessary for us to decide the correct definition of this term in order to determine coverage in this case. Even if we

were to assume, solely for the sake of argument, that the "bus" was an "auto," we find that coverage would not be available because the Executive Coach vehicle did not meet the *other* requirement necessary to qualify for the exception to the business exclusion.

{¶19} The exception to the business exclusion under Section III.A.4.e is not applicable while a vehicle is being used as "a public or livery conveyance." That phrase is not defined in the policy, so this Court must look to the commonly accepted meaning. *Gomolka*, 70 Ohio St.2d at 167-68.

{¶20} Appellants claim that coverage is not barred because of this exception because the Executive Coach bus was not being operated as a "public or livery conveyance" as that term was defined in the Sixth Edition of BLACK'S LAW DICTIONARY. Appellants state in their brief that "[a] 'public or livery conveyance' is generally regarded as '[a] vehicle used indiscriminately in conveying the public, without limitation to certain persons or particular occasions or without being governed by special terms,'" quoting BLACK'S LAW DICTIONARY (6th Ed. Rev. 1991), p. 935 (definition of "livery conveyance"). Appellants also cite to several cases from other states, many from the 1950's, in an attempt to support their claim that a "public or livery conveyance" is distinct from a charter relationship. The definition relied upon by Appellants references an often-cited Kansas garnishment

case from the 1930's, *Elliott v. Behner* (1939), 150 Kan. 876, 96 P.2d 852, which

defines the terminology as:

> **The term "public conveyance" means a vehicle used indiscriminately in conveying the public, and not limited to certain persons and particular occasions or governed by special terms. The words "public conveyance" imply the holding out of the vehicle to the general public for carrying passengers for hire.**

Id. at 856. Then, without any further discussion or explanation, the court added,

"The words 'livery conveyance' have about the same meaning." Id. Although

that particular interpretation may have been appropriate under the specific facts

and circumstances of that case at that time,[3] we find that the definition of the

terminology has been updated and more recent decisions have interpreted the

exclusion more broadly.

{¶21} Appellants argue that the "public or livery conveyance" exclusion is

not applicable because the bus was not being held out to the public at the time of

the accident -- its services were for the exclusive use of the Bluffton baseball team

and Mr. Niemeyer did not have the option to transport any other members of the

general public. This same argument was made in *Morris v. Buttney* (1999), 232

Wis.2d 462, 606 N.W.2d 626, where the driver was delivering packages

---

[3] In *Elliott v. Behner*, an insurance policy excluded coverage for automobiles "used as a public or livery conveyance for carrying passengers for compensation." The insured vehicle was a truck the county furnished to transport its employees, free of charge, from the county garage to their work site. The Kansas Supreme Court, concluding that the vehicle was not held out for use by the general public, held that the truck was not subject to the exclusion. See id. at 857.

exclusively for one company at the time of the accident. The court did not find this argument persuasive because the services were nevertheless available to others from the general public at other times. Id. Likewise, the services of the Executive Coach bus were not limited to the Bluffton baseball team other than for the short time period contracted. Its services were available for rental to the general public at other times.

{¶22} Appellants equate public conveyance to a public city bus which stops at every street corner and allows anyone to board the vehicle. While this might be the correct meaning of a "public conveyance," we must remember that, whether or not this charter bus was a "public conveyance," the exclusion is applicable to a "public *or* livery conveyance." (Emphasis added.) We need not decide whether the charter bus in this case was a public conveyance because it was a livery conveyance.

{¶23} Contrary to the older definition of "public or livery conveyance" provided by Appellants, the most recent edition of BLACK'S LAW DICTIONARY defines livery as "[a] business that rents vehicles." BLACK'S LAW DICTIONARY (9th Ed. Rev. 2009), p. 1028. "Charter" is defined as "[t]o hire or rent for temporary use." Id., at p. 267. "Conveyance" is defined as "a means of transport : vehicle." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th Ed. 2009), p.

273. Based upon these current definitions and those provided by other sources,[4] it is clear that the meaning of "livery conveyance" denotes a vehicle which has been hired or rented for temporary use from a livery, (i.e., a business that rents vehicles). Such rental vehicles would include a charter bus, as in this case.

{¶24} Given the definition of livery conveyance, the Executive Coach charter bus falls squarely within the dictionary definitions and the commonly understood meaning of a livery conveyance. See, e.g., *Concord General Mutual Insurance Co. v. Home Indemnity Co*. (Maine 1977), 368 A..2d 596, 597 (Operation of school bus by driver within the course of her employment constituted the use of a "livery conveyance" within meaning of exclusionary provision and barred coverage under her personal automobile policy.)

{¶25} Because the Executive Coach charter bus was being used as a "livery conveyance," the exception to the business exclusion is not applicable, and coverage under the Western Reserve Policy is excluded under Section III.A.4, the business exclusion provision. Therefore, we need not decide whether the Executive Coach charter bus was a "private passenger motor vehicle" or whether its use was as a "public conveyance." Appellants' first assignment of error is overruled.

---

[4] The American Heritage Dictionary defines livery as "a business that offers vehicles such as automobiles or boats for hire." AM. HERITAGE DICTIONARY (4th Ed. Rev. 2009).

{¶26} Our disposition of the first assignment of error renders the second assignment of error moot.  The judgment of the Putnam County Court of Common Pleas granting summary judgment in favor of Western Reserve is affirmed.

*Judgment Affirmed*

**ROGERS and PRESTON, J.J., concur.**

**/jlr**