[Cite as *GrafTech Internatl., Ltd. v. Pacific Emps. Ins. Co.*, 2017-Ohio-9271.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105258**

# GRAFTECH INTERNATIONAL, LTD., ET AL.

### PLAINTIFFS-APPELLANTS

vs.

# PACIFIC EMPLOYERS INSURANCE CO., ET AL.

### DEFENDANTS-APPELLEES

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-818739

**BEFORE:** Stewart, P.J., Boyle, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** December 28, 2017

**ATTORNEYS FOR APPELLANTS**

Richard D. Milone
Jones Day
51 Louisiana Avenue, N.W., Suite 400
Washington, D.C. 20001

Robert P. Ducatman
Ryan A. Doringo
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114

**ATTORNEYS FOR APPELLEES**

John G. Farnan
Weston Hurd, L.L.P.
1301 East 9th Street, Suite 1900
Cleveland, OH 44114

Shane Robert Heskin
White and Williams, L.L.P.
One Liberty Place, Suite 1800
Philadelphia, PA 19103

Rema A. Ina
Gallagher Sharp
1501 Euclid Avenue, 6th Floor
Cleveland, OH 44115

MELODY J. STEWART, P.J.:

{¶1} Eighty-four employees working in smelting plants of Alcoa, Inc., an aluminum manufacturer, alleged that they suffered injuries from exposure to toxic coal-tar pitch contained in a product made by plaintiff-appellant GrafTech International, Ltd. GrafTech demanded coverage and legal representation under a series of insurance policies issued by its primary insurer, defendant-appellee Pacific Employers Insurance Company, whose parent company is defendant-appellee ACE American Insurance Company. Pacific denied coverage under a pollution exclusion that excluded coverage for any injury caused by a substance introduced into the environment that allegedly causes the environment to become impure or harmful. GrafTech sought a declaration of its rights under the policy and asked the court to determine the coverage issue. The court ruled that the plain language of the pollution exclusion "specifically excludes coverage under the policy for the types of bodily injury claims that have been asserted against the Plaintiffs." GrafTech appeals. We agree with the court that the pollution provision excludes coverage and that Pacific has no duty to defend or pay for GrafTech's legal representation.

{¶2} In the proceedings below, the parties comprehensively addressed a choice-of-law question that GrafTech maintained was potentially dispositive of three coverage issues: (1) whether GrafTech is entitled to apply Ohio's "all sums" rule, which allows it to seek payment of all the defense costs for each of the coal-tar pitch cases within a certain selected policy year; (2) whether the "contiguous trigger" rule applies, triggering coverage under each policy that was in effect from the first date of alleged exposure to GrafTech's products and continuing through the date of claim, or death of the claimant; and (3) whether the coal-tar pitch lawsuits all arise out of a single occurrence for purposes of satisfying the Pacific policy's deductible per occurrence.

{¶3} GrafTech argued that the substantive laws of Ohio, Pennsylvania, or Delaware apply: it is a Delaware corporation based in Ohio and that Pacific has been a Pennsylvania corporation and was so at the time it issued the policies. Pacific argued that New York law applies because the Pacific policy had been underwritten, quoted, negotiated, bound, signed, issued, delivered, and performed in New York. The court agreed with Pacific and granted a partial summary judgment ruling that New York law would apply. It provided the Civ.R. 54(B) certification of no just reason for delay.

**{¶4}** GrafTech appealed from the partial summary judgment. We dismissed the appeal as nonfinal. Although both the parties and the court claimed that the choice-of-law determination controlled the outcome of GrafTech's claims, we noted that the court specifically refused to determine the merits of GrafTech's claims by applying New York law. The failure to do so meant that the trial court had not declared all the rights and obligations of the parties in a way that determined the action for purposes of R.C. 2505.02. *GrafTech Internatl. Ltd. v. Pacific Emps. Ins. Co.*, 2016-Ohio-1377, 62 N.E.3d 1031, ¶ 10 (8th Dist.).

**{¶5}** On remand from the dismissal of the appeal, the court considered the pollution exclusion contained in the Pacific policy and concluded that exposure to coal-tar pitch allegedly suffered by the employees was "pollution" that was excluded from coverage. It rejected GrafTech's argument that it should use the word "environment" in a more expansive sense to encompass the "natural world" and not the workplace. The court noted that the parties defined the word "environment" to include "any air, land, structure or the air therein, watercourse or water, including underground water." Under this definition, a factory or plant was a "structure," and the issuance of coal-tar pitch into the air inside the factory or plant would constitute "pollution" under the policy.

**{¶6}** In this appeal, GrafTech continues to argue that the court erred by deciding to apply New York law to the coverage issues. This is an argument we need reach only if we find that the court erred by concluding that the pollution exclusion barred coverage under the Pacific policy. Because we conclude that coverage for coal-tar pitch is excluded by the pollution exclusion, we need not consider which state law to apply in deciding the duty of representation.

**{¶7}** Both parties agree that, regardless of their differences on the choice-of-law issue that should apply to Pacific's duty to defend, there is no difference between the laws of Ohio and New York with respect to the pollution exclusion. *See* appellant's brief at fn. 4 ("Neither party has identified any difference between the laws of Ohio and New York with respect to the pollution exclusion, and Pacific framed its argument to the trial court on the premise that there is no difference."); Pacific's brief in opposition to motion for summary judgment at 3 ("even if Ohio law were to apply, Graftech's claims still fail. Among other things, GrafTech's claims are barred by the absolute pollution exclusion * * *."). Given these statements by the parties, we rely exclusively on Ohio law when addressing the pollution-exclusion issue, with the caveat that by doing so we express no opinion on whether the law of Ohio or New York applies to the duty- to-defend issue.

**{¶8}** Insurance policies are contracts that we interpret as a matter of law. *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6. "The fundamental goal when interpreting an insurance policy is to ascertain the intent of the parties from a reading of the policy in its entirety and to settle upon a reasonable interpretation of any disputed terms in a manner designed to give the contract its intended effect." *Laboy v. Grange Indem. Ins. Co.*, 144 Ohio St.3d 234, 2015-Ohio-3308, 41 N.E.3d 1224, ¶ 8, citing *Burris v. Grange Mut. Cos*., 46 Ohio St.3d 84, 89, 545 N.E.2d 83 (1989).

**{¶9}** The relevant portions of the policy state:

> This insurance does not apply to any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to pollution, however caused.
>
> Pollution includes the actual, alleged or potential presence in or introduction into the environment of any substance if such substance has, or is alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water.
>
> * * *
>
> We have no duty to defend any suit arising out of or in any way related to pollution excluded by this endorsement.

**{¶10}** GrafTech cites *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 2001-Ohio-1607, 757 N.E.2d 329, for the proposition that pollution exclusions apply only to contamination of the environment, not to personal injury lawsuits alleging localized exposure to allegedly dangerous products, even if such exposure happens somewhere in the "environment." It maintains that the Pacific policy is ambiguous on whether it applies only to localized pollution of the environment, so it is entitled to have the policy construed in favor of providing coverage. *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988), syllabus ("Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.").

{¶11} *Andersen* held that the release of carbon monoxide from a residential heater located in an apartment building could not be a "pollutant" under a pollution exclusion of an insurance policy because the parties had not specifically defined carbon monoxide as a pollutant. *Id*. at syllabus. The Supreme Court noted that the history and purpose of pollution exclusions were to protect insurers against claims for "'gradual environmental degradation of any type and to preclude coverage responsibility for government-mandated cleanups.'" *Id*. at 550, quoting Stempel, *Reason and Pollution: Correctly Construing the "Absolute" Exclusion in Context and in Accord With Its Purpose and Party Expectations*, 34 Tort & Ins.L.J. 1, 5 (1998). Because the carbon monoxide claim in *Andersen* involved a residential setting — an atypical setting for pollution claims involving environmental degradation — the Supreme Court found that an insured would have to "guess" on whether it was excluded. Construing the ambiguity against the insurer, the Supreme Court held that "carbon monoxide emitted from a malfunctioning residential heater is not a pollutant under the pollution exclusion of a comprehensive general liability policy unless specifically enumerated as such." *Id.* at 552.

**{¶12}** The circumstances here do not raise the same concerns addressed in *Andersen.* The alleged toxic exposure in this case occurred in an industrial setting that would be a prime example of a "traditional" case of environmental pollution. *See Citizens Ins. v. Lanly Co.*, N.D.Ohio Nos. 1:07 CV 241, 1:07 CV 467, and 1:07 CV 469, 2007 U.S. Dist. LEXIS 78557, 14 (Oct. 23, 2007) (distinguishing *Andersen* because the claim "involves residential carbon monoxide poisoning, whereas the instant case involves industrial asbestos poisoning."). One of the complaints alleged the following facts about the aluminum manufacturing process and how coal-tar pitch is used:

> Coal tar pitch plays a prominent and omnipresent role in the aluminum manufacturing process, and is used to line the pots and to make both anodes and cathodes. The plant used green anode blocks consisting of coke bound together with coal tar pitch. When the anodes were baked, hydrocarbon volatiles were released. Coal tar pitch was also used to make the cathodes, to cover all the pots during the baking process, and applied to all of the metal columns and even the ventilation systems throughout the plant as an anti-corrosive, and was additionally used as insulation to prevent corrosion and fires in the manufacturing process. The application of high temperatures to coal tar pitch released dangerous hydrocarbons, which could reach the plaintiff's decedent and others by way of respiration and by physical contact with the skin.

> Coal tar pitch is used throughout Alcoa's production process. Alcoa had production pots in service at the time of Plaintiff's employment. A production pot is a large trough approximately 40 feet long and 12 feet wide and 4 feet deep with nothing inside. Because of their number, workers were continually stripping and relining the pots. To reline the pots, the Rockdale plant used seam mix, which contained coal tar pitch. At all material times, each of the 19 pots were re-lined with approximately 5000 lbs of seam mix. The relining process required the workers to use coal tar pitch, which exposed Plaintiff's decedent and other employees by emitting vapors into the air and dust onto their clothing and skin.

Complaint of Richter at ¶ 31-31.

**{¶13}** Another complaint made similar allegations about the industrial nature of the aluminum manufacturing process:

> Aluminum is made from an anode and a cathode, which form what is called a pot. The anode (or positive electrode) is a large block of carbon made from coke and coal tar pitch. It is inserted in a steel box lined with carbon made by baking a mixture of metallurgical coke and coal tar pitch. The lining is called the cathode (or negative electrode). Between the anode and the cathode is a space filled by electrolyte, which is [sic] mixture that when heated melts into molten aluminum. It produced aluminum using the Soderberg process, which uses a continuous anode that is baked from the heat from the electrolyte cell. During electrolysis, coal tar pitch in the form of a paste is continuously added to the anode. During the baking process, the application of high temperatures to the coal tar pitch causes coal tar volatiles to be emitted in the form of polycyclic aromatic hydrocarbonates (PAHs). Several of the PAHs emitted from the pots are carcinogenic.

Complaint of Karl at ¶ 24.

**{¶14}** The allegations show a large-scale, industrial setting for the manufacture of aluminum. This industrial setting is vastly different from the residential setting in *Andersen*.

**{¶15}** GrafTech maintains, however, that *Andersen* stands for the proposition that pollution exclusions were meant to protect insurers against the "explosion" of expensive pollution clean-up litigation and that "localized" pollution falls outside the purpose of the pollution exclusion. It argues that a localized release of substances in one part of an aluminum manufacturing plant is insufficient to constitute a fouling of the "environment" under the policy because some of the substances may have traveled only a few feet.

{¶16} We must reject this argument. The parties defined the word "environment" to mean, among other things, any "structure or the air therein." "[W]ords and phrases used in an insurance policy must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined." *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347 (1982), citing *Dealers Dairy Prods. Co. v. Royal Ins. Co.*, 170 Ohio St. 336, 164 N.E.2d 745 (1960), paragraph one of the syllabus. Nothing in the words used by the parties suggests that the "air" inside a "structure" was intended to make the pollution exclusion inapplicable to minimal, localized releases of pollutants into the air within a structure. For purposes of the Pacific policy, the air in a structure can be polluted in part; or in the terms used by the parties, even a minimal, localized release of pollutants can render the air within a structure harmful or impure. This is an unremarkable conclusion: we do not understand GrafTech to suggest, for example, that the same policy definition of pollution that mentions "water" would not apply to a chemical discharge in Lake Erie that did not pollute the entire lake. Nothing in the way the parties defined the word "pollution" makes the pollution exclusion apply only to a release of pollutants in a structure that is so pervasive that it renders the air throughout the entire structure harmful or impure.

{¶17} The claims by the employees collectively alleged that they were exposed to hazardous substances in products that GrafTech supplied to Alcoa as early as 1942. The employees also alleged that they were exposed to fumes or particles released from the burning of coal-tar pitch in various parts of Alcoa plants. That these particles may not have permeated the entire manufacturing plant is immaterial — the insurance policy required only that the particles make the air inside the structure (the plant) impure or harmful.

{¶18} In any event, GrafTech does not dispute that the employees alleged that the release of fumes from coal-tar pitch had the effect of harming the environment or making the environment impure. *See* GrafTech motion for summary judgment at 31.[1]

{¶19} Finally, GrafTech argues that the pollution exclusion does not apply because all of the employee complaints contain tort allegations regarding the use or handling of a product manufactured by GrafTech that, if proven, could potentially establish liability on GrafTech's part. It maintains that these allegations that GrafTech manufactured and sold allegedly dangerous products that each employee came into contact with or was exposed to state a potentially covered claim by GrafTech for which Pacific must pay the defense cost.

---

[1]There were allegations to show plant-wide releases of fumes from coal-tar pitch. One employee alleged that in 1977, air monitoring at the Alcoa plant "showed that excess exposures" to coal-tar pitch "could be found almost anywhere in the carbon plants and that both pitch dust and volatiles were contributing to the airborne concentrations." Phillips's complaint at ¶ 72. There were other allegations of airborne "migration" of polycyclic aromatic hydrocarbonates into various departments at the Alcoa plant. *See* Pevehouse complaint at ¶ 13.

**{¶20}** An insurer's duty to defend is determined by the facts as alleged, not the legal theory of liability asserted in the complaint. *Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St.3d 574, 576, 2001-Ohio-1287, 752 N.E.2d 267 (court must decide whether complaint alleges sufficient facts to trigger a duty to defend); *Orthopedic & Neurological Consultants v. Cincinnati Ins. Co.*, C.P. No. 16CV-5552, 2017 Ohio Misc. LEXIS 426, 16 (May 8, 2017) ("a plaintiff's label for their legal theory is not the sole test for defense, there still must be conduct alleged in some manner that at least arguably could implicate coverage before a duty of defense can be found."). The complaints collectively allege that GrafTech's products released a toxic substance into the plant. The complaints further allege that GrafTech negligently failed to provide a safe product, the normal use of which resulted in a release of toxic chemicals that caused harm to exposed employees. These are allegations that GrafTech's products had the effect of making the environment impure, harmful, or dangerous. The pollution exclusion thus applies.

**{¶21}** The court did not err by finding that Pacific had no duty to defend GrafTech or that it had any duty to pay for GrafTech's defense of the employee lawsuits. Our disposition of this assignment of error moots consideration of the choice-of-law question. *See* App.R. 12(A)(2).

**{¶22}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MELODY J. STEWART, PRESIDING JUDGE

MARY J. BOYLE, J., and
ANITA LASTER MAYS, J., CONCUR